ADAM ODENWAELDER ET AL., Respondents, *v.* MICHAEL SCHORR ET AL., Appellants.

#### March 16, 1880.

1. Where two papers, identical in form and language, are each, on the same day, signed, witnessed, and published as the last will of the testator, the second paper does not effect a revocation of the first; both are the same will.

2. That one of the subscribing witnesses refuses to testify to the sanity of the testator is not necessarily fatal to the will; the question is one of fact for the jury.

3. The subscribing witnesses must know that it is the last will of the testator, and witness it at his request. But the declaration that it is his will, and the request to witness it, need not be verbal: an act or a sign will suffice.

APPEAL from the St. Louis Circuit Court.

*Reversed and remanded.*

GOTTSCHALK, for the appellants: The paper propounded was in accordance with the requirements of the statute. — Wag. Stats. 1364, sect. 3; Rev. Stats. 1879, sect. 3962. The testator's wishes were evidenced by two papers executed at one time, before the same witnesses; they were duplicates, the one of the other. — *Colvin* v. *Frazer*, 2 Hag. Eccl. 266; *Boughey* v. *Morton*, 3 Hag. Eccl. 191; *Onions* v. *Tyrer*, 2 Vern. 741; *Burtonshaw* v. *Gilbert*, Cowp. 49.

KERR & TITTMANN, for the respondents: Proof by one of the subscribing witnesses only, that the testator was of sound mind, is insufficient. — *Withinton* v. *Withinton*, 7 Mo. 589; *Cravens* v. *Faulconer*, 28 Mo. 19–22.

BAKEWELL, J., delivered the opinion of the court.

This was a proceeding under the statute (Wag. Stats. 1368, sect. 29) to contest the validity of a will. Under the direction of the court, the jury found against the will. The will, which had been admitted to probate in the Probate Court, was in German, and, when translated, reads as follows: —

ST. LOUIS, June 16, 1877.

In the name of God, Amen! Being conscious of the near approach of my last hours of life, and being still of sound and disposing mind, I hereby, in the presence of witnesses, give and bequeath to my friend Michael Schorr, for his sole and absolute use and benefit, all the money due me after my death from the lodge of Red Men No. 7, Meramec Encampment, and from the American Protestant Benevolence Society No. 14; upon the condition, however, that said Michael Schorr defray the expenses of my funeral out of said money: and I likewise appoint him administrator of said estate.                    JACOB WILHELM.

F. E. ALLENBERG, ⎤
                  ⎬ Witnesses.
FRED. IMIG,       ⎦

The only witnesses examined were the two subscribing witnesses and a man named Hemmerich.

Allenberg, one of the subscribing witnesses, testified that he was called up late at night by Schorr, to write the will of a man at the hospital. · He went, and found the man delirious, and proposed to return next morning. "The next morning, between seven and eight o'clock." says this witness, "we called again. I inquired of the sick man how he felt. He said, 'First rate.' I told him I was the party to take up his last will, and how he wanted it. He answered that he had said already the day before that he wanted Michael Schorr to have everything,—the money to be paid by the lodges, — provided he pay the funeral expenses. I then wrote the paper here in controversy, and the testator gave me the names of the lodges therein mentioned, while I was writing. I then read the paper over to him, and he said it was all right. We raised him then into a sitting posture, and he subscribed his name; but his signature was so bad that I was afraid there might be trouble, and to avoid it I wrote out another paper and asked him to sign it, which he did by making his cross at the bottom of it. This is a copy of the first, except the signature; and I wrote his name to the cross. Myself and Fred. Imig signed our names as witnesses to both the papers. This is the duplicate, or second paper written, and the last one signed by the deceased as his will, and the paper filed in the Probate Court and now shown me is the original. This latter was the first one executed, as above stated. The testator was of sound mind at the time. He spoke to me, and in my hearing to Schorr. He mentioned a debt that he owed, and then said Schorr should pay the one; that he, the testator, had already paid the other. During this time Schorr was in the room; also the steward, Imig; most of the time, also, another person whom I don't know. Don't recollect any other person." On cross-examination, the witness said that the paper presented to the Probate Court was the

paper first signed ; that he knew, from what Schorr told him on the way, how Wilhelm intended to will his money ; that Wilhelm did not speak of his relatives ; that Imig signed as a witness because he (the witness) asked him to sign ; that the deceased did not ask Imig or him to sign.

Hemmerich testified that, being at the hospital, he went to Wilhelm's room, and found there Schorr, the notary, and Imig. The notary was writing the will. When he had finished, Wilhelm was lifted up in bed, and signed the will in the presence of the three. The will was read to him by the notary, who inquired if it was right, and Wilhelm answered, " Yes." Wilhelm seemed like a man about to die, but was perfectly conscious. The will was made three hours before his death. An hour after the will was made, deceased told the steward he felt better, had no pain, but that his legs were cold. When the will was written, Wilhelm knew what was doing.

The will was then offered in evidence, but objected to on the ground that the defendant had failed to prove the execution by both the subscribing witnesses. The defendants then introduced Imig, the subscribing witness, a nurse in the hospital in which Wilhelm died, who testified that the sick man told the notary to go ahead and draw the will ; that the notary, whilst writing it, asked the name of the lodge, and the sick man gave him the name ; that the notary read the will to the sick man, and asked him if he was satisfied, and he replied, " Yes, yes, yes ;" that when raised, Wilhelm wrote so badly that the name was almost illegible ; that the notary said that that would hardly do, that he would write another, to which Wilhelm could make his cross, and then there would be two ; that he wrote another, and wanted the dying man to make his mark ; but he asked to be let alone, and said, " That is good already." Being urged, however, he made his cross. Both papers were witnessed by Imig and the notary. The witness further said

that he did not think the sick man was in his mind when he signed either paper.   He was lying on his back, and did not notice what was going on around him.   That when the witness testified in the Probate Court, he was compelled to answer yes or no to the question as to whether the deceased was of disposing mind ; and not being allowed to explain, and to avoid trouble, he answered " Yes," thinking that he had to do so.

The proponents then offered to read in evidence the will first signed, being the one proved in the Probate Court.   It was objected to on the ground that it was not the paper executed last as a will, and the objection was sustained. The second paper was then offered and excluded.   It was admitted that this was an exact duplicate of the first.   Both papers were then offered and rejected, and the court then instructed the jury to find that the paper produced and probated is not the will of the deceased.

The statute provides that, " if any person interested in the probate of any will shall appear within five years after the probate or rejection thereof, and, by petition to the Circuit Court of the county, contest the validity of the will, or pray to have a will proved which has been rejected, an issue shall be made up, whether the writing produced be the will of the testator or not, which shall be tried by a jury, or, if neither party require a jury, by the court."   Wag. Stats. 1368, sect. 29.   The proceeding under this section is a proceeding at law, and the question is one for the jury, who are the sole judges of the weight of the evidence.   *Young* v. *Ridenbaugh*, 67 Mo. 574.   If there is substantial evidence from which an inference in favor of the will may be drawn, it is error to take the case from the jury.

It is contended by the respondents, first, that the only conclusion that can be drawn from the testimony in this case is, that the paper admitted to probate in the Probate Court and attacked in this proceeding, being not the last paper signed as a will by the testator, was not the last will.

of the deceased; and, second, that, waiving the difficulty arising from the fact that it was shown that a subsequent will was executed, the will offered was not proved, because one of the subscribing witnesses testified that the testator was not of disposing mind, and that this fact is necessarily fatal to the will.

The two papers offered in evidence are admitted to be identical in meaning, and even in language.   One is an exact duplicate of the other.   It is quite clear that the second paper did not effect a cancellation of the former will.   A will, under our statute, can be revoked only " by a subsequent will, in writing, or by burning, cancelling, tearing, or obliterating the same by the testator, or in his presence, and by his consent and direction."   Wag. Stats. 1364, sect. 4.   This provision as to modes of revocation is the same as the provision in the statute of 29 Charles II., except that the word "tearing" has been added.   It has always been held that a will shown to have once existed continues unless revoked in one of the modes pointed out in the statute, *animo revocandi*.   *Minkler* v. *Minkler*, 14 Vt. 127, per Redfield, J.; *Mundy* v. *Mundy*, 15 N. J. Eq. 290.; *Onions* v. *Tyrer*, 2 Vern. 742.   If the second will in this case was void, it was no revocation.   If it was formal it was no revocation, because the two papers are identical as to their contents, and there was no *animus revocandi*.

It is not a question of the identity of a piece of paper. The properly attested will of one of disposing mind must not be set aside on any such mere technicality.   The paper on which the will is written may be lost or destroyed, and yet the will itself may be proved.   The will is not the mere paper on which it is written, but something else ; otherwise, when the paper was gone the will would be gone ; but the law is not so.   Whether a will be destroyed before or after the death of the testator, if destroyed without his knowledge or consent, it does not cease to be his will, and its contents may be established by competent proof.   *Dickey* v.

*Malechi*, 6 Mo. 183. A copy of a will may be proved
where the original is lost. *Graham* v. *O'Fallon*, 3 Mo.
507; *s. c.* 4 Mo. 601. It is not enough, to be sure,
to prove that the testator made a will, or to prove its
general tenor, or some bequests; but where proof can
restore the entire will, — not every letter or word, for that
is immaterial, but all that is important, so that the court
may be sure that it is the probate of the same will the tes-
tator executed, — the will can be proved, and the destruc-
tion of the original paper is immaterial. Redf. on Wills,
217.

In the case at bar there was no revocation. Both papers,
if executed at all, were executed at the same time, with the
same intention, and are word for word the same. It is
therefore immaterial which is proved. They are the same;
and each of them, if a will at all, is the last will of the de-
ceased.

One of the attesting witnesses swore that the testator was
not of disposing mind. If this were necessarily fatal to a
will, either one of the two witnesses required by the statute
would have it in his power to destroy a will made by one
of the soundest mind, and with careful compliance with
every formality required by law. The provisions of our
statute regarding the execution and attestation of a will are
almost an exact transcript of those of the statute of 29
Charles II., which requires devises of land to be in writing,
signed by the testator, or by some person in his presence
and by his express direction, and to be attested and sub-
scribed in the presence of the devisor by three or four wit-
nesses. Our statute requires two witnesses only. The
rule, both in this country and England, is that the party
propounding the will must produce all the witnesses, make
them his, and give the contestants the benefit of cross-ex-
amination, if these witnesses are alive and in a condition to
give evidence; and that the court, generally, will not decree
the establishment of the will, unless the devisee has called

all the subscribing witnesses, or has accounted for their absence. But their testimony is not conclusive, either for or against the will. *Tatham* v. *Wright*, 2 Russ. & M. 1; *Bootle* v. *Blundell*, 19 Ves. 494; *Thornton* v. *Thornton*, 39 Vt. 122.

" One who puts his name as a witness to the execution of a will," as is remarked by Judge Redfield (Redf. on Wills, 95, sect. 5, note), " whilst he was conscious that the testator was not in possession of his mental faculties, places himself very much in the same attitude as if he had subscribed a will which he knew to be a forgery;" and the testimony of one who has solemnly attested the disposing mind of the testator, by setting down his name as a witness to his will, will necessarily be received with suspicion when he afterwards testifies that the devisor did not understand what he was doing. It is the business of the subscribing witness, not merely to attest the corporal act of signing, but " to try, judge, and determine whether the testator is *compos* to sign." The heir has the right to have the sanity of the testator proved by all the witnesses that the statute has placed about the testator. But these subscribing witnesses *prima facie* attest the sanity of the testator. If on the witness-stand they contradict this, their testimony is to be received with the most scrupulous jealousy, and the reason of the general rule which estops a party to impeach his own witness fails when the party is compelled by law to call him, however much he may doubt his credibility. We have cited above, cases in which wills have been established by a preponderance of testimony, though the subscribing witnesses have on the stand contradicted their former solemn attestation, and sworn against the sanity of the testator. The whole matter is for the jury under our statute, who are the judges of the weight of the evidence and of the credence to be given to the statements of each witness, and who can put the fact of the former attestation against the present statement of the witness in determining what they ought to believe, and who will be

very likely to do so if the disposing mind of the testator is shown, in opposition to the testimony of a subscribing witness, by disinterested and intelligent witnesses otherwise worthy of belief, and who are shown to have had proper opportunities for forming an opinion upon that point.

There was, therefore, some evidence to go to the jury in the present case; and, this being so, it was the right of the proponents of the will to go to the jury with such case as they had, if they chose to do so.

We are referred, on the argument, to *Withinton* v. *Withinton*, 7 Mo. 592. That case is not at all in conflict with anything that has been said. That was a case in which an instrument, in form a deed, was set up for a will. There was one subscribing witness, and the paper was acknowledged before a justice. It was contended that there was here a compliance with the statute, and two witnesses. But the Supreme Court held that the duties of an officer taking acknowledgment of a deed and those of the subscribing witness to a will are entirely different; that the officer taking an acknowledgment is not bound to assure himself of the sanity of one whose acknowledgment he takes, and is not supposed to certify to that; and that there were not, therefore, according to the meaning of the statute, two witnesses, to the paper proposed as a will. We hold, of course, that there must be two subscribing witnesses to a will in Missouri; but we further hold that the fact that those witnesses, or either of them, in a proceeding to establish the will, contradicts his former attestation and denies the sanity of the testator, to which he had formerly certified when the will was made, is not necessarily fatal to the will, but is a matter for the jury, provided there be competent evidence *aliunde* as to the sanity of the testator.

This case is to be distinguished from the case of *Miltenberger* v. *Miltenberger*, *ante*, p. 306. There it was held that if the proponents of a will rejected by the Probate Court fail in the Circuit Court to prove the execution and attestation

by the subscribing witness, these facts cannot be proved by the proponents, being beneficiaries under the will. Not that it necessarily becomes impossible to prove these facts at all, but that the statute, while it permits the beneficiaries to be witnesses in a contested will case, does not permit them to make out the *prima facie* case, and to prove the will in the place of the subscribing witnesses. It may be possible to make out the *prima facie* case even though the subscribing witnesses on the stand contradict their attestation as to the sanity of the testator. But the *prima facie* case must be made out; and this cannot be done by the beneficiaries, who are not admitted, under our law, to be subscribing witnesses to a will. The interested parties cannot prove the will, since the statute provides (Rev. Stats., sect. 3999) that a legatee, before giving testimony concerning the execution of a will, must have ceased to have any interest in the will.

There must be some declaration by the testator that the paper was his will, and a communication made by him to the witnesses that he desires them to attest it as such. But this need not be verbal. An act or a sign is enough. If the scrivener says this to the witnesses in the presence of the testator, it will do. The witnesses must know that it is the will of the testator, and witness it at his request. *Mundy* v. *Mundy*, 15 N. J. Eq. 290; *Cravens* v. *Faulconer,* 28 Mo. 21.

For the reasons given, the judgment is reversed and the cause remanded. Judge LEWIS is absent; Judge HAYDEN concurs.