GERMAN EVANGELICAL BETHEL CHURCH OF CONCORDIA v. MARGARETHA REITH ET AL., Appellants.—39 S. W. (2d) 1057.

Court en Banc, June 2, 1931.

*Aull & Aull, William W. Schwartz, R. M. Bagby* and *Henry C. Chiles* for appellants.

*Blackwell & Sherman, Lyons & Ristine* and *Sam C. Major* for respondents.

ELLISON, J.—Action in the Circuit Court of Howard County, on change of venue, to establish a certain propounded instrument as the last will of Adelheid Eckhoff, deceased, the Probate Court of Lafayette County having refused to admit it to probate as such. From a verdict and judgment upholding the will the defendants have appealed.

The respondents are the beneficiaries named in the disputed will, and in a general way may be described as corporations, associations and members of boards of various organizations centering around the German Evangelical Bethel Church of Concordia, Missouri. The appellants are the collateral heirs of the testatrix and the administrator of her estate appointed by the probate court following its rejection of the will. She left no lineal descendants.

The sole question presented by the appeal is whether the will was legally executed; and that turns on the single question of fact as to whether the three attesting witnesses signed the will in the presence of the testatrix, and she in theirs, as required by Section 519, Revised Statutes 1929. On this issue the appellants contend the respondents did not make a showing sufficient to take the case to the jury; and' they therefore complain of the refusal 'of their peremptory instruc-

tions in the nature of demurrers to the evidence offered at the close of the respondents' case and the whole case. Further error is assigned on the admission and exclusion of evidence bearing on the ultimate disputed fact.

The three attesting witnesses were Louis Runge and E. M. Runge, brothers, and J. S. Klingenberg. The latter was the scrivener and predeceased the testatrix. The respondents called the two Runges as witnesses at the trial. In substance their testimony was that Klingenberg and Mrs. Eckhoff came to their store in Concordia and asked them to sign her will as witnesses. Mr. Klingenberg had with him an instrument which they were given to understand was the will. She signed first, the two Runges next and Mr. Klingenberg last, all, of course, in the presence of each other. No part of the will was read to or by the two witnesses.

Later in the day Klingenberg returned to the Runge store without Mrs. Eckhoff. He had in his possession that time a purported will already signed by her and announced a mistake had been made in signing the first time; and he asked the Runge brothers to sign as witnesses again. Recognizing the testatrix's genuine signature they did as requested, the names of the three being written in the same order as before. On this occasion also they were not acquainted with any of the contents of the instrument; and all they did was outside the presence of the testatrix—that is to say, she did not sign or publish the document as her will in their presence, and they did not subscribe it as witnesses in hers.

After Mrs. Eckhoff's death George Klingenberg, a son of the deceased scrivener, discovered in the office safe which his father used an envelope marked to indicate it enclosed her will. He turned it over to the bank which had been handling her property. The envelope was found to contain the disputed will and also a paper referred to in the record as "Exhibit A," set out next below, the part in italics being an unsigned notation in the handwriting of the scrivener:

"DXA

"JMG

"to make transfers sign deeds if necessary, collect all moneys, accounts, that may be due my estate.

"In witness whereof I have subscribed my name to this my last will and testament, this the 30 day of November, 1923.

"Adelheid Eckhoff (written in German).

"Signed, published, and declared by the above named Hermann Kessener, this to be his last will and testament, and in the presence of us, and at his request, and in the presence of us each other we have subscribed our names as witnesses hereto this the 30 day of November, 1923.

"Louis Runge,

"E. M. Runge,

"J. S. Klingenberg.

*"This was signed by error in Runge's office on the above date then I went after discovering it and had her to sign the other original and the Runge boys signed seeing her signature."*

In the preceding paragraphs the facts are stated rather fully as an aid to understanding the case. But in reality the picture presented to the jury was different, as the court did not permit all the foregoing evidence to get before them. The propounded will is known in the record as "Exhibit 1." Counsel for respondents called the two surviving attesting witnesses, the Runge brothers, to the stand and exhibited the instrument to them and elicited from them a statement of the circumstances in which they attested *a* will for the testatrix the first time. Then Exhibit 1 was shown to them and they swore to their signatures thereon and to the authenticity of the signatures of the testatrix and Mr. J. S. Klingenberg. But respondents' counsel never did ask them squarely if Exhibit 1 was the paper signed by them and the testatrix in the presence of each other. Once or twice a question was asked assuming that as a fact, as where counsel, referring to the first occasion, when all the parties were together, inquired, "Well, who signed this paper [Plaintiff's Exhibit 1] first?" But there were interruptions or objections and the questions were abandoned. That line of investigation was finally closed with this question, "This [Plaintiff's Exhibit 1] is the paper I submitted to you during this examination?" and the witness answered in the affirmative.

On cross-examination both witnesses were pointedly asked whether the propounded will, Exhibit 1, was signed by them in the presence of the testatrix and both said they could not tell. Answering the first question put to him along this line Mr. Louis Runge replied, "So far as I know." Being pressed for a more explicit answer he stated he did not know. Then he was asked why he didn't know and was permitted to answer, without objection, "Well there was a mistake in the will in some way—and it was signed two papers—I can't say which was first and which was not." The further fact was elicited from the witness E. M. Runge, by *respondents* on cross-examination that both times when he signed papers he understood he was attesting Mrs. Eckhoff's will.

The court allowed these two witnesses to identify "Exhibit A" as one of the two papers they signed that day, and to testify the signatures thereon were genuine, but excluded as hearsay all statements made to them by Mr. Klingenberg, the scrivener, on the occasion of the second signing, and also refused to allow appellants to introduce the paper Exhibit A in evidence either with or without the

scrivener's memorandum thereon, though the two witnesses had identified it and the will as the two papers they signed, and the will was admitted. The trial court took the view that the witnesses could use the exhibit to refresh their memories, but that it was incompetent of itself.

In addition to their complaint of the insufficiency of the evidence, the appellants assign this action of the court as error, contending the whole paper, Exhibit A, including the deceased scrivener's memorandum thereon, was competent in connection with the cross-examination of the two attesting witnesses, and as a part of the *res gestae*. This latter theory is particularly stressed with respect to the scrivener's memorandum; and it is further insisted that even though the memorandum was properly excluded, the rest of the exhibit should have been admitted.

The first witness called by the respondents was George Klingenberg, a son of the deceased attesting witness J. S. Klingenberg. Over the objection and exception of the appellants, and although the two other attesting witnesses, the Runge brothers, were present in the court room waiting to testify, the court allowed young Klingenberg to swear to the genuineness of his father's signature, and the testatrix's appearing at the end of the propounded will. Appellants assign this as error on the ground that the best evidence of the execution of the will was the testimony of the two surviving attesting witnesses, and that under Sections 534 and 535, Revised Statutes 1929, it is only where the testimony of all or all but one of the attesting witnesses is not obtainable that other evidence may be adduced to prove the signatures of the testator and the absent witnesses.

Toward the close of the trial the respondents offered to show by several witnesses that there was a bitter feeling between the Lutheran Church and the German Evangelical Bethel Church of Concordia, the principal beneficiary in the will; that members of each carried that feeling to the extent of refusing to do business with the bank patronized by the other; that the two Runge brothers were members of the Lutheran Church; and that one of them had recently refused to permit his daughter to attend the graduating exercises of her high school class in Concordia, because they were held in the German Evangelical Bethel Church. The trial court excluded all this proffered evidence, and the respondents closed their case.

In the course of the cross-examination of the two Runge brothers, they swore they had no prejudice against the proponents of the will and no interest in the result of the trial; and E. M. Runge admitted he told the probate judge when the will, Exhibit 1, was offered for probate that he did not sign it in the presence of the testatrix, and he refused to execute the verified proof thereof. Later his deposition was taken and in reply to questions on the same point he

answered once, ''To my knowledge, no,'' and again, ''As much as I know, no.'' The probate judge was produced as a witness for appellants. He was their only witness. He said when the propounded will was offered for probate both Runge brothers stated they did not sign the will in the presence of the testatrix.

The will has sixteen clauses and is in very good form and fair as to phraseology, but full of misspelled words, even the simplest ones. The attestation clause is as follows:

''Signed, published and declared by the above named Adelheid Eckhoff, to be her last will and testament and in the presen*t*s of us and at her request, and in the presence of each other we have subscribed our names as witnesses hereto this the 30th day of November, 1923.

(Signed) ''Louis Runge,<br>''E. M. Runge,<br>''J. S. Klingenberg.''

I. The two living attesting witnesses Louis and E. M. Runge were unable to say whether they subscribed the propounded will in the presence of the testatrix. This was the only direct testimony on the point. Section 519, Revised Statutes 1929, requires attestation in that manner and the statute is mandatory. [Ray v. Walker, 293 Mo. 447, 463, 240 S. W. 187, 191.] The appellants therefore contend the respondents failed to make a prima-facie case since the law cast on them, as proponents of the will, the burden of showing its due execution. [Berkemeier v. Reller, 317 Mo. 614, 621, 296 S. W. 739, 741.]

On the other hand the respondents insist they made a case for the jury under Sections 534, 535, Revised Statutes 1929, by proving the genuineness of the signatures of the testatrix and the third attesting witness, J. S. Klingenberg, who was deceased; and they further contend the recitals in the attestation clause attached to the will and admittedly signed by the two Runge brothers, raised a presumption of due execution which alone was sufficient to make a prima-facie case even against the unfavorable or negative testimony of the Runges. In reply the appellants maintain that the proponents of a will cannot resort to secondary evidence—that is, proof of the signatures of attesting witnesses—except where all or all but one of the attesting witnesses are dead, insane or their residences are unknown. In other words appellants' position is that if the proponents can or do procure' the testimony of at least two of the attesting witnesses, they cannot aid their case or contradict the appearing witnesses by going further and proving the written attestation of the will by other witnesses who are dead, insane or missing, is authentic. And in any event they say the presumption of due execution arising from an attesting clause

and proof of the genuine signatures of the witnesses thereto, goes no further than the recitals in the clause—that is to say, the clause cannot be presumptive evidence of any facts other than those it recites. This is important because the attestation clause in this case does not say the witnesses signed in the presence of the testatrix, as will be seen by referring back to it in our statement of the case.

1. We take up first the question as to the effect of the proof offered showing the subscription of the deceased witness J. S. Klingenberg, was genuine. Section 519, Revised Statutes 1929, requires every will to be attested by at least two subscribing witnesses. Section 532 provides for taking the depositions of witnesses who are sick or who reside outside the county, when a will is offered for probate. Section 534 says when one of the subscribing witnesses is examined, but the others are dead, insane or their residences unknown, such proof shall be taken of the handwriting of the testator and the missing witnesses and of such other circumstances as would be sufficient to establish the will at common law. Section 535 provides for proof of the will in like manner when all the witnesses are dead, insane or their residences unknown.

Now it is true the provisions of Sections 534 and 535, just summarized, do not exactly fit the facts of this case, because here two of the subscribing witnesses appeared and testified, whereas the statutes deal with situations where the testimony of all or all but one of the witnesses is unobtainable. It is also true that the several statutes above referred to, taken together, are construed by our decisions as requiring the proponents to present all the attesting witnesses if their testimony is available. Otherwise a prima-facie case is not made. [28 R. C. L. 370, sec. 371; 40 Cyc. 1305; Berkemeier v. Reller, 317 Mo. 614, 625, 296 S. W. 739, 743; Lindsay v. Shaner, 291 Mo. 297, 311-2, 236 S. W. 319, 323-4; Rayl v. Golfinopulos (Mo. Div. 2), 233 S. W. 1069, 1070; Bell v. Smith, 271 Mo. 619, 625, 197 S. W. 128; Berst v. Moxom, 157 Mo. App. 342, 348, 138 S. W. 74, 76; Odenwaelder v. Schorr, 8 Mo. App. 458, 464.]

But while this is so, the law does not leave a will at the mercy of the subscribing witnesses; and even though some or all of them appear and testify adversely the instrument may nevertheless be established by competent evidence aliunde. [28 R. C. L. 371, sec. 372; 40 Cyc. 1302, 1309; 63 A. L. R. 1195, 1209, note; Odenwaelder v. Schorr, supra (8 Mo. App. 458); Holmes v. Holloman, 12 Mo. 535; Mays v. Mays, 114 Mo. 536, 21 S. W. 921; Morton v. Heidorn, 135 Mo. 608, 37 S. W. 504; Craig v. Craig, 156 Mo. 358, 361, 56 S. W. 1097, 1098; Southworth v. Southworth, 173 Mo. 59, 72, 73 S. W. 129, 132; Lorts v. Wash, 175 Mo. 487, 503, 75 S. W. 95, 99; Hughes

v. Rader, 183 Mo. 630, 700, 82 S. W. 32, 52; Knapp v. St. Louis Trust Co., 199 Mo. 640, 660, 98 S. W. 70, 76; Avaro v. Avaro, 235 Mo. 424, 429, 138 S. W. 500, 501; Heinbach v. Heinbach, 274 Mo. 301, 318, 202 S. W. 1123, 1128; Harrell v. Harrell, 284 Mo. 218, 232, 223 S. W. 919, 922; Charles v. Charles, 313 Mo. 256, 267, 281 S. W. 417, 419.]

Proof that a witness, later dead, insane or missing, subscribed a will has a tendency to prove its due execution. The statutes recognize that fact by providing wills may be established on such showing when witnesses cannot be produced. If the missing witness in this case had appeared and testified the statutory formalities were observed, the proponents would have made a prima-facie case notwithstanding the testimony of the other two witnesses was adverse. That was the situation in one or two of the cases cited above. And because of his death there is a rebuttable presumption of the same facts, his signature and that of the testatrix being authenticated. In Barnewall v. Murrell, 108 Ala. 366, 380, 18 So. 831, it is stated the Alabama statute requires two attesting witnesses, but provides a will may be established by one or more of them; "or, if they be dead, insane . . . then by proof of the handwriting of the testator, and of one of the subscribing witnesses." It was argued the statute meant all the attesting witnesses must be dead or otherwise unavailable before secondary evidence could be presented, but the court ruled against this contention, holding if any one or more of the subscribing witnesses could not be produced the proponents might resort to proof of his or their signatures. [See also 33 Ann. Cas. p. 902, note.]

Some cases say the primary evidence, that is the testimony of the subscribing witnesses who do appear, should come first in the order of proof; and that procedure was not followed in this case. But there is no doubt in our minds about the fact that the evidence introduced to show the genuineness of the Klingenberg signature was competent and substantial—unless there be something in appellants' next assignment, that the defect in the attestation clause robbed it of its probative value.

2. There appears to be only one case in this State bearing on the presumptive or inferential effect of attesting an instrument claimed to be a will. [Cone v. Donovan, 275 Mo. 557, 204 S. W. 1073.] There, D wrote a letter directing the issuance to a named beneficiary of such an amount of certain corporate stock as would yield a stated income per year. He signed the letter, had it subscribed by two witnesses, and put it in a sealed envelope with directions indorsed thereon to deliver the same to the addressee unopened in event of his death. After his demise suit was brought to establish the letter

as a will. The attesting witnesses identified their signatures, but had wholly forgotten the transaction. This court said, *arguendo,* if the instrument on its face had purported to be a will a presumption might be indulged from the fact of attestation, *in the absence of evidence to the contrary,* that the witnesses knew they were attesting a will; or, though in form a letter, if it had borne a proper attestation clause, perhaps it would be a will. But on the record facts, it was ruled no presumption was justified because there was "evidence to the contrary," and even if the presumption could be indulged it simply raised a question of fact for the jury or trial judge when an appellate court could not determine. (Italics ours).

But the doctrine seems to prevail widely in other jurisdictions that a complete attestation clause showing observance of all statutory requirements raises a presumption of the due execution of a will, if and after the signatures of the witnesses and testator are proven to be genuine. Thus, in 40 Cyc. 1304, it is said:

"A full attestation clause reciting compliance with all formalities of execution and signed by the witnesses is prima-facie evidence of the validity of the will, although the witness's memory is faulty, or he contradicts the facts stated in the clause, or where he is dead. The statements of the attestation clause may, however, be rebutted by proper evidence." (Italics ours.)

And in 28 Ruling Case Law, page 369, sec. 370:

"A properly executed attestation clause is held to furnish prima-face proof of all facts essential to due execution to which attesting witnesses could depose if present. . . . The absence of an attestation clause merely imposes upon the proponent of the will the burden of proving at the time of probate the necessary facts of execution in some other manner."

And though there is authority to the contrary, as indicated in the quotation last aforesaid, we think a like rule should prevail in this State when there is no testatum clause and the attestation is merely by subscription. Our statute requires that a will "be attested by two or more competent witnesses subscribing their names to the will in the presence of the testator." [Sec. 519, R. S. 1929.] The subscription is the symbol of attestation and no attestation clause is necessary. [14 L. R. A. (N. S.) 255, note; Berberet v. Berberet, 131 Mo. 399, 408, 33 S. W. 61, 63, 52 Am. St. 634; Avaro v. Avaro, supra (235 Mo. l. c. 429, 138 S. W. l. c. 501); Welch v. Wagner (Mo.), 232 S. W. 146; Nook v. Zuck, 289 Mo. 24, 32, 233 S. W. 233, 235.]

By thus signifying they have attested the will, what do the subscribing witnesses affirm? The answer to that question would best be borrowed from Nunn v. Ehlert, 218 Mass. 471, 106 N. E. 163, 54 L. R. A. (N. S.) 87, 91, where it is said:

"To attest means to bear witness. When the statute requires that the witnesses shall attest, what is it that they are to bear witness to? Plainly, to those facts to which they have to testify when put on the stand as attesting witnesses, namely, that those things existed 'and were done which the statute requires must exist and be done to make the writing a valid will." [See also Tilton v. Daniels, 79 N. H. 368, 109 Atl. 145, 8 A. L. R. 1073.]

In other words, by subscribing the will the attesting witnesses *impliedly* vouch for its due execution as fully or as broadly as they would do expressly if there were a complete attestation clause, though, perhaps, with less force and emphasis. And hence it is that after such subscription, Sections 534 and 535 of our statutes provide the will may be established by proof of the handwriting of the testator and the witnesses whose testimony cannot be obtained.

In Berberet v. Berberet, supra (131 Mo. 1. c. 409, 33 S. W. 1. c. 64), this rule was expressly recognized when a witness was dead and the will had no attestation clause; and in Mead v. Trustees, Presbyterian Church, 229 Ill. 526, 82 N. E. 371, 11 Ann. Cas. 426, 14 L. R. A. (N. S.) 255, where the witnesses though living had forgotten the transaction.

But what shall be said when there is an attesting clause but it is imperfect and does not cover the fact in dispute—as in this case, whether the witnesses subscribed the will in the presence of the testatrix? We have considered the effect of the absence of a clause in the preceding paragraphs because of its bearing on that question. There are cases which sustain appellants' contention, saying an attesting clause is not presumptive evidence any further than its own recitals go (1 Page on Wills (2 Ed.) 571, sec. 355; Norton v. Goodwine, 310 Ill. 490, 493, 142 N. E. 171); but we are unable to accept that view for reasons now to be stated.

In our opinion an attesting clause, in respect of its imperfections and omissions, ought not to be judged like other instruments. The execution of a will is not an adversary transaction. The testator calls in witnesses to vouch for the due execution of a document often of vast importance to him. They are to speak after his death when he cannot speak for himself. By subscribing the will, either with or without a testatum clause, they tacitly undertake to do so and signify the statutory formalities were observed. [1 Page on Wills (2 Ed.), sec. 678, p. 1124, sec. 682, p. 1130; Rose v. Allen, 41 Tenn. 23, 28.]

All the parties who participate in the transaction act with a purpose to its validity. The statute has long made certain simple requirements; and while it is said there is no inference of fact that everyone knows the law except where the maxim *ignorentia legis nemine excusat* applies (22 C. J. 149, sec. 85), yet it is also stated

there is a prima-facie or rebuttable presumption to that effect. [10 R. C. L. 874, sec. 17; Harper v. A. & W. P. Rd. Co., 33 Ga. App. 259, 125 S. E. 885, 888; Butler v. Livingston, 15 Ga. 565, 567.] But whatever may be the truth about that generally, it can hardly be thought the parties joining in the execution of a will would intentionally omit the taking or recording of a necessary step and thereby frustrate or imperil the consummation of their common purpose; and yet they apparently take cognizance of the statute by providing two or more witnesses and having them subscribe the instrument. In addition to that is the fact that wills are ordinarily and naturally executed by the testator and the witnesses at the same time. These considerations make it more logical to presume the statute was complied with in a given case, and that omissions in the testatum clause were the result of oversight or inadvertence, or that the fact was assumed, especially there, as here, the wording of the clause is confusing and does not clearly disclose just what was done.

A familiar illustration of this is found in cases where there is an issue as to the testamentary capacity of the deceased. Attesting clauses rarely contain a recital concerning the mental condition of the testator and yet it is universally recognized that a subscribing witness by testifying against the will on this point seriously discredits himself. [Southworth v. Southworth, supra, 173 Mo. l. c. 74, 73 S. W. l. c. 133.]

What we are saying is that mere omissions in an attestation clause do not wholly destroy its value as presumptive evidence, but we would not be understood as asserting the presumption arises no matter what the recitals of the clause may be. It might affirmatively state the will out of court. Take the instant case. The attestation clause appearing in the paper Exhibit A, which the appellants say was attached to the first will signed, recited that *Hermann Kessener*, a person other than the testatrix Adelheid Eckhoff, had signed and published the instrument as *his* will. Now if the propounded will had been presented for probate with that attestation clause on it, doubtless there would be no presumption of due execution by Adelheid Eckhoff, though she signed as testatrix. But even then if the subscribing witnesses should testify to facts showing due execution of the will by her, it would be a valid will. [1 Page on Wills (2 Ed.), sec. 354, p. 569; Monroe v. Huddart, 79 Neb. 569, 113 N. W. 149, 14 L. R. A. (N. S.) 259.]

There are not many cases on the question as to the value of a defective attestation clause as presumptive evidence. The subject is touched by the annotations in 51 L. R. A. (N. S.) 927, 946, and L. R. A. 1916C, 1218, 1233. A few decisions may be referred to.

In Chaffee v. Baptist Missionary Conv., 10 Paige's Chancery 85, 40 Am. Dec. 225, 227, Chancellor Walworth remarks there are

cases deciding observance of statutory formalities may be presumed from circumstances, though not noticed in the attestation clause, after the witnesses to a will are dead.

In Newell v. White, 29 R. I. 343, 348, 73 Atl. 798, the attestation clause recited the three witnesses subscribed at the request of the testator, in his presence and in the presence of each other, but did not say the testator made or acknowledged his signature to the will in their presence. At the trial all of them denied they attested the will at all, and that they signed the clause, two of them declaring they were in another place at the time. Upon proof of their signatures and in connection with other weak evidence it was held there was a presumption of due execution sufficient to take the case to the jury.

In Dayman v. Dayman, 71 L. T. 699, the testator signed his name by mark at the foot of the will and close thereby the two attesting witnesses wrote theirs under the word "witnesses." In the extreme corner of the page were the words "turn over" and on the back a complete but unsigned (it seems) attestation clause stating, "The will on the other side was signed" and continuing with the usual recitals. Both attesting witnesses swore the will was not subscribed by them in the testator's presence, but that their signatures and the attestation clause were all written downstairs in another room after the testator had signed. One of the witnesses declared his name, as it appeared on the front of the page, was not in his handwriting; but there were some circumstances which were thought to raise a doubt as to the accuracy of the witnesses' testimony. It was held the maxim *omnia praesumuntur rite esse acta* applied and the court pronounced for the will.

In a case styled In the Goods of William Leach, 12 Jur. 381, it is stated the attestation clause was not "sufficiently full." The witnesses remembered they signed their names in the testator's presence, but could recall nothing else—whether the testator signed in their presence, or they in the presence of each other. A third person who was present was not called to testify. *Held*, the presumption was in favor of due execution, and probate of the will was decreed.

Peebles v. Case, 2 N. Y. Sur. Rep. 226, 240, is a case much like this in some of its facts. One of the two wills, both executed by the testator and purporting to be attested by the same witnesses on the same day, was offered for probate as the *last* will. The two witnesses swore they did not attest the will presented and denied their signatures, one of them very positively. Both asserted they did sign the other will and narrated incidents occurring during its execution which identified that particular instrument. But on evidence of handwriting, identification of the instrument propounded as the one recognized by the deceased, memoranda in the handwriting of the

deceased, other slight circumstantial evidence and the presumption of due execution arising from the recitals of the testatum clause, the disputed will was probated. The opinion does not set out the clause, but we infer its declarations covered the points in controversy. However, the case is authority on the proposition that an attestation clause is presumptive evidence of due execution though the issue be as to the identity of two wills executed the same day and attested by the same witnesses, with the testimony of the subscribing witnesses much stronger against the will propounded than it was in this case.

Some cases hold the presumption of due execution arising from an attesting clause or subscription obtains only in the absence of evidence to the contrary—or that it is rebutted when the attesting witnesses appear and give conflicting testimony, particularly if it is convincing. [Reynolds v. Massey, 219 Ala. 265, 122 So. 29, 34; Wood v. Davis, 161 Ga. 690, 131 S. E. 885, 888; Nunn v. Ehlert, supra, 218 Mass. 471, 106 N. E. 163, 54 L. R. A. (N. S.) 87, 93; In re Taylor's Estate, 39 S. D. 608, 613, 165 N. W. 1079.]

If these decisions have reference to the comparative *weight* of the evidence, and apparently some of them do, we have no quarrel with them, though each case must stand on its own facts. But if they mean to say adverse testimony from the subscribing witnesses produced by the proponents under compulsion of law destroys what would otherwise be a prima-facie case for the will, we cannot agree. The proponents do not abandon the presumption by presenting the testimony. They are forced to do it and may cross-examine, contradict and impeach the witnesses. [40 Cyc. 2692-3; 32 Ann. Cas. 1122, note; Ann. Cas. 1916D, 1104, note.] Furthermore, the presumption is not alone that the witnesses if present would *say* the will was duly executed. That sort of presumption would disappear in the light of their actual testimony. But it is more than that: it is presumptive evidence that the will was *in fact* duly executed, and subsists as against their assertions to the contrary. Its tends to contradict and impeach them; and having inherent probative force, presents a jury question, no matter how convincing the evidence to the contrary may be. In this State neither the trial judge nor the appellate court can pass on the weight of the evidence in law cases.

Neither does the presumption wholly lose its force if the witnesses testify the attestation clause was not read to or by them, as a few cases say. In other matters the law does not ordinarily allow people thus summarily to destroy the effect of writings signed by them. [13 C. J. sec. 248, p. 370; 22 C. J. sec. 1380, p. 1070, sec. 1529, p. 1142.] And while the attestation clause of a will is not contractual and does not directly pass rights or titles, yet the validity of the will, which does do so, is dependent upon the fact of attestation,

and this the witnesses vouch for either expressly or impliedly by their subscription. They can come on the stand and deny it, of course, and sometimes truthfully; but to say their denial, however impressive, robs their previous written attestation of its character as *evidence,* is to confuse weight, credibility or plausibility with substance.

Without prolonging this discussion we hold the respondent-proponents made a prima-facie case, and that the trial court did not err in submitting it to the jury.

II. Appellants contend the trial court erred in refusing to permit the living attesting witnesses, the Runge brothers, to tell what the deceased scrivener, Klingenberg, said to them when he came the second time to have them sign Mrs. Eckhoff's will; and in excluding the paper marked Exhibit A, being a page purporting to contain the concluding lines of another will of the same date, signed by the testatrix, Adelheid Eckhoff, and subscribed by the same witnesses as the will propounded, but the attestation clause thereon showing it to be a part of the will of another person, Hermann Kessener. Below the clause was an unsigned memorandum in the handwriting of Klingenberg, the scrivener, as follows: "This was signed by error in Runge's office on the above date when I went after discovering it and had her to sign the other original and the Runge boys signed seeing her signature." This page, Exhibit A, and the propounded will were found in the same envelope among the papers of the deceased scrivener after the death of the testatrix. The exhibit was offered in evidence first as a whole, and then with the scrivener's memorandum eliminated. The court rejected it both ways.

First, as to the exclusion of the memorandum, or, more accurately, of the whole exhibit with the memorandum included. At the opening of their case, as we have stated, the proponents proved the genuineness of the signature of the deceased attesting witness J. S. Klingenberg on the propounded will, thereby availing themselves of the presumption of due execution arising under Section 534, Revised Statutes 1929. Appellants contend the memorandum, and the rest of the exhibit in connection therewith, were competent as a statement from the deceased witness tending to impeach the favorable presumptions or inferences following along from proof of his authentic attestation. It is not clear that this evidence was offered on that theory at the trial, the contention then being that it was a part of the *res gestae;* but inasmuch as the cause must be retried, we shall decide the question.

There is a sharp conflict in the authorities. Some cases hold such contradictory statements are inadmissible on the more or less tech-

nical ground that no basis for impeachment is or can be laid—since the dead, insane or missing witness cannot, of course, be asked if he made the statement. Other decisions go further and say broadly that wills ought not to be put in jeopardy by alleged extra-judicial statements of witnesses proven when they cannot be denied or explained by them. But it seems to us reason and fairness argue in favor of admitting the evidence for the purpose of impeachment.

By proving the signature of the missing witness and claiming the benefit of the presumption of due execution the proponents constructively produce the witness in court and the legal effect is as if he had testified to the due execution of the will (33 Ann. Cas. 902, note; In Appeal of Linton, 104 Pa. St. 228); and the contestants are denied the right of cross-examination. In these circumstances we think they should have the right to impeach the constructive testimony of the witness by showing contradictory statements. Such is the rule in analogous situations, impeachment of dying declarations for example. [State v. Dipley, 242 Mo. 461, 147 S. W. 111; 16 A. L. R. 411, note.] It is said this puts the proponents at a disadvantage because they cannot re-examine the witness and afford him an opportunity to deny or explain the statements attributed to him. That may be so, but they can ordinarily cross-examine the witnesses who testify to the statements, and in our opinion no such hardship or possible suppression of the truth results as would follow from first raising a presumption of due execution out of mere proof of a signature and then sheltering that presumption from attack either by cross-examination or impeachment. We hold the evidence was competent. Authority pro and con on the question may be found in 1 Page on Wills (2 Ed.), sec. 682, p. 1130; 28 R. C. L. sec. 375, p. 374; 27 L. R. A. (N. S.) 294, note; 19 Ann. Cas. 1009, note.

As regards the statements made by the deceased scrivener to the Runge brothers when they were requested to attest Mrs. Eckhoff's will the second time. To permit the Messrs. Runge to detail from the witness stand all of their conversation with Mr. Klingenberg on that occasion, including what he said about the mistake in executing the will the first time, would be to allow the introduction of hearsay testimony. And yet the contestants were not obliged to limit the Runges to a mere categorical statement that they did sign two papers that day. It was proper for them to testify to all facts within their knowledge, one of which was *why* they signed the second paper, i. e., because they understood a mistake had been made in the execution of the first paper. This far they could go—that is, tell what their understanding was—and the proof would be explanatory of their conduct and corroborative of their statement that they did sign two papers, but it would not go to the merits of the issue as to whether a mistake had in fact been made in at-

testing the will the first time, insofar as their understanding on that point was based on hearsay and not on their own actual knowledge, if any. This we understand to be the rule applicable to this case, as laid down in such decisions as Smith v. Ohio Millers' Mut. Fire Ins. Co., 320 Mo. 146, 170, 6 S. W. (2d) 920, 929; State v. Carl Wright, 319 Mo. 46, 4 S. W. (2d) 456; McCormick v. Travelers Ins. Co., 215 Mo. App. 258, 274, 276, 264 S. W. 916, 922.

The same is true of the attestation clause on the page Exhibit A. The court permitted the two Runge brothers to identify it as one of the papers they signed and the signatures of the testatrix and the deceased J. S. Klingenberg thereon were proven to be genuine. But nevertheless appellants were not permitted to introduce the paper in evidence. We think this was error. The credibility of the two witnesses, Louis and E. M. Runge, in respect of what they swore to on the stand, was assailed. Evidence was offered to show they were hostile to the will and while this was excluded yet it is clear the proponents went to the jury on the theory that the Runges were mistaken or not telling the truth. The contestants had a right to elicit the testimony from them that they did not know whether they signed the will propounded in the presence of the testatrix, because they signed another paper of the same kind for her out of her presence, on the same day. And in connection with that testimony the contestants should have been allowed to introduce the paper and to show how and where it was found. It was competent as proof of its own execution, in corroboration of their testimony. [22 C. J. sec. 1029, p. 860.]

Appellants contend all the evidence referred to in the preceding paragraphs related to that collection of primary facts constituting the necessary and immediate field of judicial inquiry, and therefore was admissible as a part of the *res gestae*. That may be and we think is true as to the attestation clause on the paper, Exhibit A, its contents, and the facts and circumstances attending its execution. [Erfort v. Consalus, 47 Mo. 208.] But, "actions speak louder than words." When it is sought to lay aside the hearsay rule and bring into the case extra-judicial statements, especially of one deceased who cannot be called on either to deny or explain, greater caution should be exercised. There must be an inherent probability of their truth, or, at least, guilelessness. It is not enough that the evidence is important or the author of the statements apparently sincere and trustworthy; they must be vouched for by the impersonal facts and so related to the principal event as to be a part thereof. [Landau v. Travelers Ins. Co., 305 Mo. 563, 573, 267 S. W. 376, 378.] This we think is not true of the scrivener's memorandum on Exhibit A. There is nothing to show when or in what circumstances it was made. It was, how-

ever, competent for the purpose of impeachment, as we have said. And the statements made by the scrivener to the Runge brothers when they signed as witnesses the second time can hardly be said to come within the exception to the hearsay rule. We cannot convict the trial court of error in excluding these parts of the evidence.

For the reasons assigned the cause is reversed and remanded. *Atwood, Gantt, Frank, White* and *Henwood, JJ.,* concur.