72 P.(2d) 21

In re AKIN'S ESTATE.

AMENT v. WATKINS et al.

No. 4276.

Supreme Court of New Mexico.

Sept. 28, 1937.

Wilson & Woodbury, of Silver City, and Mae M. Ament, of Alpine, Tex., for appellant.

A. W. Pollard and A. W. Marshall, both of Deming, for appellees.

BRICE, Justice.

This appeal was taken from a judgment of the district court of Luna county in an

action to contest the will of Martha C. B. Akin, deceased, adjudging that such will was in fact the will of the testatrix.

A number of grounds were alleged in the petition to defeat the will, but all abandoned except one to the effect that the will was not executed as provided by sections 154-105 and 154-108, Ann.Comp.St. 1929, which are:

"All wills by which any property, real, personal or mixed, is devised or bequeathed, shall be reduced to writing and signed by the testator, or some one in his presence and by his direction, and attested in the presence of the testator by two or more credible witnesses. Provided, however, that any will which has been admitted to probate in any other state according to the laws of such state, shall be admitted in this state in the manner provided by law." Section 154-105.

"The witnesses to a written will must be present, see the testator sign the will, or some one sign it for him at his request as and for his last will and testament, and must sign as witnesses at his request in his presence and in the presence of each other." Section 154-108.

The court made numerous findings of fact, most of them evidentiary and unnecessary to a determination of the case; but it is agreed that all facts necessary to support the district court's judgment were proven except the manner of the execution of the will.

The will was dated December 23, 1931; the testatrix died on the 8th day of May, 1935, in Luna county, N. M.; the will was duly probated as the last will and testament of the alleged testatrix, on the 10th day of June, 1935, and the contest petition was filed December 26th following.

The instrument (except the word "witnesses" and their signatures) was in the handwriting of the testatrix and her purported signature thereto was in fact her genuine signature. Beneath her signature was the word "witnesses," and underneath that word were the genuine signatures of W. P. B. McSain and J. J. Aragon, Jr.

The closing of the will, including the signatures of the testatrix and witnesses, is as follows:

"In witness thereof

"I Martha Chesebrough Burdick Akin have here unto subscribed my hand this day

"Martha Chesebrough Burdick Akin
        "December 23rd, 1931
"Witnesses
    "Wm. P. D. McSain
    "J. J. Aragon, Jr."

The substance of the district court's findings of fact, Nos. 12, 13, and 14, is: The will was signed by the testatrix as and for her last will and testament on the 23rd day of December, 1931, at the First National Bank of Las Cruces, N. M., in the presence of W. P. B. McSain and J. J. Aragon, Jr., who saw the testatrix sign the same as

stated by her, as and for her last will and testament, and, at her request and in her presence and in the presence of each other, the said McSain and Aragon signed the will as subscribing witnesses. That in fact it was duly executed with all the formalities required by the New Mexico statutes.

It is these findings of fact only that are attacked. The question is whether they were established by substantial evidence.

The witness W. P. B. McSain died in 1933, and the only testimony of appellee with reference to the execution of the will was that of Mrs. Florence Watkins, a daughter of the testatrix, and J. J. Aragon, Jr., the only living witness to the execution of the will.

Mrs. Watkins testified that in December, 1931, she took her mother from Deming, N. M., to El Paso, Tex.; that her mother stopped at the First National Bank of Las Cruces to see Mr. McSain, who was an old friend. When her mother came back to the automobile, she said, "That is done." Witness did not know her mother's purpose in going into the bank; that she had found the will in her mother's home at a place where her mother told her it would be in case of her death; that it was in her mother's handwriting.

J. J. Aragon, Jr., one of the subscribing witnesses to the will, testified that on December 23, 1931, he was an assistant cashier of the First National Bank of Las Cruces; that he had known W. P. B. McSain, the other subscribing witness, since 1928; that he and Mr. McSain saw Mrs. Akin sign her name to the will, and that Mr. McSain and Mrs. Akin were both present at the time he and Mr. McSain signed as subscribing witnesses; that the genuine signatures of himself and Mr. McSain appear thereon; that he signed it in the presence of Mr. McSain and Mrs. Akin, but that he did not know whether at Mrs. Akin's or Mr. McSain's request, or both; that Mr. McSain signed it in the presence of Mrs. Akin and the witness, but he did not know at whose request.

This testimony was greatly weakened by his further examination in which he stated in substance that he had only a faint recollection of what took place; that it was several years ago and he did not remember all the details; that he did not recall where it was signed; that he was often called upon to witness wills and other instruments at the bank and to take acknowledgments; that the signature of Mrs. Akin must have been affixed when he signed as a witness, else he would not have witnessed it; nor would he have done so unless he had been requested so to do. He stated: "I don't remember seeing anybody sign it. Evidently I was asked to witness it or I wouldn't. I don't remember anything about it except, like I said, I witnessed it, and I was asked to witness it. I don't believe I would have witnessed a signature unless the principal signed in my presence and before I signed it as a witness. I wrote to Mr. Pollard (Proponent's attorney) that I did not remember witness-

ing Mrs. Akin's will. However, my signature appeared on it as a witness. At that time I had no independent recollection of the transaction whatever, and any recollection I have now is based on the fact that my name appears on the instrument as a witness. I don't remember where the paper was signed nor where Mr. McSain and Mrs. Akin were at the time. At that time I was working at the window and Mr. McSain worked toward the front, next to the window. I don't remember whether Mrs. Akin came into the bank. I never knew her, and don't ever remember seeing her. I must have seen her; I witnessed the will. The only way I can fix the date is because it appears on the will. It looks to me like the signatures are written in different ink. I wrote mine with my fountain pen. Mr. McSain's signature is written in a different ink from any of the others. My recollection is based entirely on the instrument itself to a certain extent. I knew what the instrument was when I signed it, but have no independent recollection of it. I don't remember whether Mrs. Akin said: 'This is my will' or whether she asked me to sign as a witness, or whether Mr. McSain or both of them did. I wouldn't witness anybody's signature unless I saw them sign it; I could not say whether I would or not. I have no recollection of seeing Mrs. Akin sign the paper; nor that Mrs. Akin stated what the paper was; but Mrs. Akin or Mr. McSain, or both, asked me to sign it. I know some one requested me to sign it because my name is on it and I would not have done it otherwise."

The whole effect of this testimony is that the witness has no distinct recollection of the transaction, or any of its details. His name appears on the will as a witness, and from this he draws the conclusions to which he first testified. He has, as he states, only a faint recollection of the matter.

Appellant introduced no testimony regarding the execution of the will. It is established as a fact and admitted by appellant that the instrument is in the handwriting of the testatrix; that her genuine signature is subscribed thereto; that the word "witnesses" appears below and to the left of her signature; underneath which are the genuine signatures of W. P. B. McSain, who is dead, and J. J. Aragon, Jr., who recalled none of the details of the transaction, but had "a faint recollection" that such transaction occurred; that he would not have witnessed the signature of testatrix unless she had signed first and in his presence, and unless he had been asked to do so.

While we are limited to the one question, that of the proper execution of the will; though the fact that it is a holographic will indicates it was deliberately made for her will and last testament. There is no suggestion in the testimony of fraud or undue influence.

Such is the frailty of human recollection that in an incredibly short time the average person will forget such details as occur in the execution of documents, though, from his habits of care or otherwise, he

may be entirely certain in his own mind of facts he cannot remember. The witness Aragon testified that he would not sign his name as a witness to the signature of a person he did not know unless he saw him write it.

It has been held innumerable times by the courts of this country and England that a complete attestation clause above the signature of witnesses to a will raises a presumption of the due execution of the will, if the signatures of the testator and witnesses are proven to be genuine. German Evangelical Bethel Church of Concordia v. Reith, 327 Mo. 1098, 39 S.W. (2d) 1057, 76 A.L.R. 604, and annotations at page 617; and it is generally held, and we so hold, that in the absence of an attestation clause, if the will is subscribed by the genuine signature of the testator with the genuine signatures of two persons under the word "witnesses" below the signature of the testator, that the same rule applies if the subscribing witnesses are dead or cannot recall with certainty any of the details of the transaction.

And such should be the rule; for, if the proponent of a will is compelled to establish its due execution by affirmative testimony unaided by such presumptions, in practically all similar cases wills will be canceled, not because of any failure to comply with the law in their execution, but because of the frailty of human recollection.

The statutes of California and Massachusetts regarding the manner of executing wills are almost identical, and in substance the same as those of New Mexico. The identical question has been before the courts of those states with like holding.

It was said in Re Pitcairn's Estate, 6 Cal. (2d) 730, 59 P.(2d) 90, 92:

"It is sometimes suggested that the recitals in the attestation clause furnish the basis for the presumption, so that the court in upholding the will against contradictory evidence is really making a finding from the declarations in the instrument. Following this theory contestants seek to limit the presumption to cases where a full attestation clause is contained in the will.

"In our view the distinction thus drawn is illogical and the rule is too narrow. There is no need of an 'attestation clause'; it is sufficient that a will be witnessed or attested, and the recital of the steps in execution is not required. 68 C.J. 711, § 392. It does not seem reasonable, therefore, to have the important presumption of due execution turn upon the presence or absence of this unnecessary provision. The foundation of the presumption is the proof of genuineness of the signatures, for the instrument is then on its face a valid will. Doubtless recitals in an attestation clause are entitled to greater weight, but the logical basis for the presumption, as well as its practical necessity, are the same whether or not there is such a clause."

That case affirmed the District Court of Appeals, the opinion of which is reported in 50 P.(2d) 78.

In a similar case it was stated by the Supreme Judicial Court of Massachusetts in Leatherbee v. Leatherbee, 247 Mass. 138, 141 N.E. 669, 670: "There is no statutory provision that an instrument drafted in the similitude of a formal will shall not be set up because the witnesses are dead, are insane, are beyond the jurisdiction of the court, or, after a lapse of many years, are unable to recollect anything material to the execution of the will other than the fact that the signatures to the proffered instrument are those of the testator, and of the persons who appear as witnesses upon it. Such a rule would make the validity of the will dependent, not upon the order and time of affixing signatures, not upon the capacity of the testator to execute a will, nor upon the absence of fraud and undue influence, but upon the fullness, accuracy, and persistency of the recollection of one or more of the persons who signed it as a witness."

To the same effect is Nickerson v. Buck, 12 Cush. (Mass.) 332; Dewey v. Dewey, 1 Metc. (Mass.) 349, 35 Am.Dec. 367; Orser v. Orser, 24 N.Y. 51; Jauncey v. Thorne, 2 Barb.Ch. (N.Y.) 40, 45 Am.Dec. 424; Abbott v. Abbott, 41 Mich. 540, 2 N.W. 810; Re Rosenthal's Will, 100 Misc. 84, 164 N.Y.S. 1060; Carpenter v. Denoon, 29 Ohio St. 379; In re Peverett (1902) Probate (Eng.) 205; Scarff v. Scarff (1927) 1 Ir.R. 13; (See annotations in 76 A.L.R. 622); German Evangelical Church v. Reith, supra; 1 Page on Wills, § 675. The Supreme Church of Washington holds to the contrary. In re Chafey's Estate, 167 Wash. 185, 8 P.(2d) 959.

 The appellee made prima facie proof that the execution of the will complied with the requirements of the statute, and these facts were admitted; only the presumptions of due execution following such proof were denied.

The judgment of the district court is affirmed.

It is so ordered.

HUDSPETH, C. J., and SADLER, BICKLEY, and ZINN, JJ., concur.