Berberet v. Berberet.

---

BERBERET v. BERBERET *et al.*, *Appellants.*

Division Two, December 3, 1895.

1. **Will**: WITNESSES: ATTESTATION: STATUTE. Under Revised Statutes, 1889, section 8870, providing that every will shall be attested by two or more competent witnesses subscribing their names thereto in the presence of the testator, the signatures of the witnesses without the attestation clause is sufficient.

2. ———: ———: EXECUTION. A will dictated by a widow of requisite age and sound mind, and signed by her in the presence of two witnesses who subscribed their names in her presence, *held* properly executed.

3. ———: UNDUE INFLUENCE: BURDEN OF PROOF. Though a son is both a devisee and the executor of a will, and is shown to have had influence over the testator, still the burden of proof, in an action to set aside the will, is not thereby cast on him.

Berberet v. Berberet.

4. ———. A will will not be annulled simply because the jury may be of the opinion that the testator did not do justice to his family connections.

*Appeal from Knox Circuit Court.*—HON. B. E. TURNER, Judge.

REVERSED.

*Lafe Dawson* and *John W. Ennis* for appellants.

(1)   An attestation clause is not necessary to the validity of a will. *Ela v. Edwards*, 16 Gray, 91; *Fry's Will*, 2 R. I. 88; 1 Jarman on Wills [5 Am. Ed.], p. 218.   See, also, *Laycraft v. Simmons*, 3 Bradf. 35. (2)   Where the verdict is against the evidence and all the probabilities of the case it should not be permitted to stand.   *Spohn: v. Railroad*, 87 Mo. 74; *Foster v. Foster*, 77 Mo. 227; *Clark v. Fairley*, 30 Mo. App. 335. (3)   The *onus* was on the proponents only to prove the proper execution and attestation of the will and that the testatrix was of proper age and sound mind. *Maddox v. Maddox*, 114 Mo. 46; *Jones v. Roberts*, 37 Mo. App. 163.   (4)   Mere inequality in the disposition of the property does not shift the burden of proof from the proponents of the will.   The influence of a wife, child, or friend, if exerted in a reasonable manner and without deception or imposition, will not avoid a will though made in such person's favor.   1 Redf. on Wills, sec. 36; *Myers v. Hauger*, 98 Mo. 433; *Jackson v. Hardin*, 83 Mo. 184; *Rule v. Maupin*, 84 Mo. 587.

*O. D. Jones* for respondent.

(1)   The paper in controversy in this case was not executed according to the laws of the state relating to wills, or to frauds and perjuries.   It has no attesting clause and does not disclose the character in which Steffen and Hirner intended to sign.   It is not sufficient that a party subscribe his name to a will; he must at

the time intend to do so as an attesting witness. 1 Redfield on Wills, part 1, p. 238. The character in which one signs a will can not be eked out by oral evidence. *Catlin v. Catlin*, 55 Mo. 330. (2) If there were a "note or memorandum" of the character in which he signed, then one part of the will might be helped out by the other. *White v. Watkins*, 23 Mo. 423; *Hinde v. Whitehouse*, 7 East. 558; *North v. Mendel*, 73 Ga. 400; *Lincoln v. Erie Co.*, 132 Mass. 129; *Grafton v. Cummings*, 99 U. S. 100.

BURGESS, J.—This is a suit to set aside the will of Eva Catharine Berberet, late of Knox county. For grounds for setting aside the will the petition alleges:

*First.* That the instrument of writing admitted to probate is not the last will of the deceased, Eva Catharine Berberet, for the reason that it is not signed, published, and declared to two attesting witnesses upon its face, or any where upon it, in writing, to be such will, and that it is not executed and attested by at least two witnesses, according to law.

*Second.* That any or all proofs to show that the will was signed, attested, published, and declared in the presence of at least two attesting witnesses, and that they at her request and in her presence subscribed said writing as such witnesses, and intended so to do at the time; and that the said deceased was then of sound and disposing mind; was and is all within the statute of frauds and perjuries, for the reason that it is not stated, in whole or in part, upon or in said writing.

*Third.* That said writing was not understood by the deceased; that its provisions or terms were not of her framing or choosing and that it was never explained or understood by her, and that she never so published or declared it to two or more attesting witnesses, etc.

VOL. 131 mo—26

*Fourth.* That the said instrument of writing purporting to be the will of the deceased is in the handwriting of the executor therein appointed, who is alleged to be the principal devisee under its terms; that said writing was composed and framed by him, and the signature of said deceased procured thereto when she did not understand it by reason of his undue influence over her.

The petition then concludes with the usual prayer, asking to have the writing declared to be not the last will of the deceased, Eva Catharine Berberet.

The answer of the defendants, after admitting the formal allegations of the petition as to the relation of the parties to the testatrix, denies that the proof necessary to establish said will is or was within the statute of frauds and perjuries, as alleged in the petition; denies that the instrument in question was dictated and framed by the executor therein named; denies that the deceased did not understand the provisions of said instrument, denies that the said executor therein named dictated, advised, or counseled the making of said will; but avers that the executor therein named wrote said will at the request of the deceased, who dictated every clause and provision thereof; that deceased was at the time of sound and disposing mind, and that she clearly understood the nature of the business in which she was engaged, and that the instrument of writing in question is the last will and testament of Eva Catharine Berberet, deceased, and that she understood the instrument in all its parts and provisions.

A trial was had on the issues thus joined at the June term of the circuit court which resulted in a verdict for the contestant. Defendants then filed motions for new trial and in arrest, which being overruled they appealed.

The will bears date January 19, 1893, and Mrs. Berberet died the eighth day of February, 1894. She was at the time of her decease about seventy-two years of age, and was the mother and grandmother of the defendants, her children and grandchildren, eleven in all. The property disposed of by the will was of the value of about $7,000. Her husband died January 8, 1877, leaving an estate worth $20,000 and she and her son Enos were executors of his will, Enos having the principal charge and management of the business. The estate was still unsettled at the time of her death.

Enos and Johanna, her daughter, testified that their mother requested him to write the will and that he came to her house in Edina, where she had been living and keeping house with Johanna, to write it. Enos testified that it was written five or six weeks before it was taken by her to Joseph Hirner, Atlay J. Steffen and Thomas Burk to get them to sign it as witnesses to its execution. He and Johanna also testified that the will was dictated by their mother, and explained by them to her. It was also shown by Johanna that three weeks before the will was written her mother insisted that she should write her will; that she declined to do so, and that she then asked Enos two or three times to write it before he consented.

Mrs. Berberet could not read written English, but could printed. She could read written German, and spoke it fluently. The will was written by Enos and admitted to be in his handwriting. It was signed by Mrs. Berberet in German, and Hirner and Steffen signed it in her presence, and at her request, as witnesses thereto.

On behalf of contestant it was shown that Mrs. Berberet and Enos, as executors of the estate of Enos Berberet, deceased, were entitled to commissions as such executors amounting to about $1,600, which

she had given to her said son by her will.    Evidence was also introduced tending to show that Enos had influence over his mother in matters of business.

The writing in contest is as follows:

"In the name of the Lord my God, Amen.

"Know all men by these presents that I, Eva Catharine Berberet, of the city of Edina, in the county of Knox, state of Missouri, being of sound and disposing mind, do make and publish this my last will and testament hereby revoking all other wills.

"*First*.    I desire that my funeral expenses and the services of a requiem mass and all debts that I may be owing be first paid and a neat tombstone be placed over my grave of the value of not less than seventy-five dollars and not more than one hundred and twenty-five dollars; the said one hundred and twenty-five dollars for a tombstone shall include a small tombstone to be erected over my sister Susan Fox's grave, now lying in the Catholic cemetery in Edina, Knox county, Missouri; the cost of said Susan Fox's tombstone is not to exceed over twenty-five dollars.

"*Second*.    I give and bequeath the sum of fifty dollars to the person officiating as pastor of the St. Joseph Catholic church of Edina, Knox county, Missouri, to be used and applied to the benefit of said church, the money to be paid to the pastor of St. Joseph church as soon as my executors may conveniently receive the same.

"*Third*.    I desire that my said executors shall have masses read for the said Eva Catharine Berberet to the amount of seventy-five dollars, thirty-five dollars for high masses, and forty dollars for low masses, the high masses to be said one each year, on the day of each years of my death, and the low masses to be said one at the end of every four months.

"My executors shall notify said parish priest of St. Joseph church when to be read and shall pay for same when each mass is read, in case of my death, if there can be a final settlement made before the amount of masses read; then in the event the money for said masses shall be paid over to my executors to be used for said above masses.

"*Fourth.* I desire that my executors shall pay to my daughter Johanna G. C. Berberet the amount of two dollars per week, for her services and attention given at my last sickness to be paid to her as conveniently as my executor may receive the same.

"*Fifth.* I give and bequeath to each of my following named children the sum of sixty dollars each, to Nicholas J. Berberet, E. B. Berberet, Johanna G. Berberet, Emma McBride, wife of John McBride, Florence T. Miller, wife of John Miller, said amount to be paid as soon after my death as my executors may conveniently receive the same as the above amounts has been made to me as presents heretofore from each.

"*Sixth.* I give and bequeath to my daughter Johanna G. C. Berberet all my wearing apparel, all my household and kitchen furniture, beds and bedding, all provisions and wood that I may depart this life possessed and it is my desire that my said daughter Johanna G. C. Berberet, shall take immediate possession of all of said property named in this clause after my death and the same shall not be included in the inventory of my estate.

"*Seventh.* I give and bequeath to my son, John W. Berberet, the sum of fifty dollars to be paid to him by my executor when a final settlement can be made of my estate, both real and personal. If the whereabouts of my son John W. Berberet can not be found at the time of my final settlement, then the said fifty dollars shall be paid equally to his children; the said

sum of fifty dollars shall be the full and complete share of my said son, John W. Berberet, in and to all my estate both real and personal.

"*Eighth*. I give and bequeath to my son, Michael J. Berberet, the sum of one hundred dollars to be paid to him by my executors when a final settlement can be made of my estate; said sum, one hundred dollars, shall be the full and complete share of my said son, Michael J. Berberet, in and to all my estate both real and personal.

"*Ninth*. I give and bequeath to my son, George W. Berberet, the sum of one hundred dollars, to be paid to him by my executors when a final settlement can be made of my estate; said sum, one hundred dollars, shall be the full and complete share of my said son, George W. Berberet, in and to all my estate, both real and personal.

"*Tenth*. I give and bequeath to the heirs of Elizabeth J. Reis, my daughter, now deceased, the sum of forty dollars to be paid to them by my executors when a final settlement can be made of my estate; said sum of forty dollars shall be the full and complete share of my said daughter, Elizabeth Reis, now deceased, in and to all my estate, both real and personal.

"*Eleventh*. I give and bequeath to the heirs of Mary C. Reis, my daughter, now deceased, the sum of forty dollars to be paid to them by my executor, when a final settlement can be made of my estate; said sum of forty dollars shall be the full and complete share of my said daughter Mary C. Reis, now deceased, in and to all my estate both real and personal.

"*Twelfth*. I give and bequeath to my son, E. B. Berberet, all fees and commissions arising out of and due me at present and future, by reason of my being coexecutor with my son, E. B. Berberet, of my late husband, Enos Berberet, deceased, estate; and I

further agree that in case there has been or may here-
after be any losses of money or property in the admin-
istration of the estate of Enos Berberet, deceased, by
myself and my said son, E. B. Berberet, the whole of
the same shall be paid out of my money or property
belonging to my estate so that my said son, E. B.
Berberet, shall not lose or be compelled to pay any part
of the same, and the remainder of my said estate not
herein and before distributed shall all be held subject
to the payment of any such deficiency.

"*Thirteenth*. I give and bequeath to my children,
Nicholas J. Berberet, E. B. Berberet, Franklin J.
Berberet, Johanna G. C. Berberet and Emma A. Mc-
Bride, wife of John McBride, and Florence T. Miller,
wife of John Miller, in equal parts, share and share
alike, all the balance of my real and personal property
of my estate of which I may depart my life possessed
of, subject, however, as to the several legacies and
sums and conditions herein and before mentioned and
described in the above will.

"*Fourteenth*. This includes all clauses in said will.
It is my strict request, if any of my said children or
heirs shall decline or refuse to abide under my said
will and testament, then, in that event, they shall
receive only the sum of five dollars and shall, therefore,
be excluded from my said will and my real and per-
sonal property.

"I hereby appoint my son, E. B. Berberet, my
executor to execute and carry out the intention of this
my last will and testament.

"In witness whereof I hereby set my hand and
affix my seal this nineteenth day of January, 1893.

(In German)     "EVA CATHARINE BERBERET,     [SEAL]
                "JOSEPH HIRNER,               [SEAL]
                "ATLAY J. STEFFEN,            [SEAL]
                "THOMAS BURK."                [SEAL]

Plaintiff's insistence is that the writing in contest is not the will of Eva Catharine Berberet, and was improperly admitted to probate as such, because not executed according to law, in that it has no attesting clause, and does not show on its face the character in which Steffen and Hirner signed it, whether or not as attesting witnesses, within the meaning of section 8870, Revised Statutes, 1889, in regard to the manner in which such instruments are required to be executed. That section reads as follows:

"Every will shall be in writing, signed by the testator, or by some person, by his direction, in his presence; and shall be attested by two or more competent witnesses subscribing their names to the will in the presence of the testator."

The statute says the will shall be attested by two or more competent witnesses *subscribing* their names thereto. It does not say that the word attest shall be written on, or at the conclusion of, the will, or that there shall be written thereon anything whatever other than the names of the attesting witnesses.

At common law attestation of a will was not necessary. That requirement, in order to its execution, is purely statutory. Under a statute of Massachusetts, which requires a will to "be attested and subscribed in the presence of the testator by three or more competent witnesses," it was held by the supreme court of that state in a case where the subscribing witnesses had signed their names in the usual place for the signatures of witnesses, but without any attestation clause, to be a compliance with the statute. *Ela v. Edwards*, 16 Gray, 91. The court says: "The single requirement of the statute is that the instrument 'be attested and subscribed in the presence of the testator by three or more witnesses.' Even as to this, though it be essential that the facts be so established by the

evidence, yet neither the statute nor the decisions of the courts require that it be recited in the form of an attestation clause.''

In *Roberts v. Phillips*, 4 El. & Bl. 450, it is said: ''It never has been held that a testimonium clause is necessary under this statute, or that the witnesses should be described as witnesses on the face of the will. Nothing more is required than that the will should be attested by the witnesses; i. e., that they should be present as witnesses and see it signed by the testator, and that it should be subscribed by the witnesses in the presence of the testator; i. e., that they should subscribe their names upon the will in his presence.''

In the case of *Fry's Will*, 2 R. I. 88, there was no attestation clause other than the word ''witness.'' One of the subscribing witnesses having died, upon proof being made of the handwriting of the subscribing witness and of the testator, it was held to be *prima facie* evidence that all the requirements of the statute had been complied with.   To the same effect is *Jackson v. Christman*, 4 Wend. 277.

The evidence conclusively showed that the paper was drawn up by Enos Berberet, one of the sons of the testatrix, at her request; that she dictated it; that it was then explained to her by him; that she went to A. J. Steffen and asked him if he would sign her will and testament, and he told her that he would; that she then went off, and in about three weeks came again into his store and asked him to sign it; that she then went out and came back with Mr. Hirner and signed the will in their presence, she signing it first, Hirner next, and the witness last, all in the presence of each other.

Joseph Hirner testified that she called on him in his store in the winter and asked him if he would come up to Mr. Steffen's and witness her will; that he told her ''all right'' and went along with her; that when

they got there she signed the will before witness and Mr. Steffen and in their presence, and that they signed it in her presence and in the presence of each other.

After the will was signed she again took charge of it. All that was done in respect to procuring the signatures of the witnesses was done by the testatrix herself. She knew the character of the instrument because she dictated it, and requested the witnesses to witness it as her will. In addition to all this she was single at the time of the execution of the instrument, over the requisite age, and of sound mind. We must, therefore, hold that the will was properly executed.

Now, as to the instructions given by the court on behalf of the plaintiff. The first and second have, in effect, already been disposed of by what was said in the preceding paragraph of this opinion. As to the third, there was no evidence to justify it. And even if there had been, it is vicious in that it tells the jury that if they believe from the facts admitted, to wit, that the writing in contest was written by Enos B. Berberet, one of the devisees, and he is also appointed executor in the will, that he is the son of the testatrix, and that she could not read English, and the other evidence in the cause that he had great influence over the mind of his mother, and that advantage is given him by the terms of the will, then the burden was cast upon him to show that the will was fairly obtained, etc.

The presumption is in favor of the validity of the will and the fact of unjust discrimination in its provisions, if such be the case, and the other facts before stated did not shift the burden of establishing its validity on the defendant. There must have been undue influence exercised in the procurement of the will. *McFadin v. Catron*, 120 Mo. 252; *Maddox v. Maddox*, 114 Mo. 35. It is not enough that Enos B. Berberet had great influence over his mother in respect of her busi-

ness affairs alone in order to shift the burden to him in explanation of such discrimination, but it must be shown that he procured the execution of the will by the exercise of such influence and thereby gained an unfair advantage. A testator having sufficient mental capacity has the right "to make an unreasonable, unjust, injudicious will, and his neighbors have no right, sitting on a jury, to alter the disposition of his property, simply because they may think the testator did not do justice to his family connection." *Boylan v. Meeker*, 15 N. J. Eq. 310, quoted with approval in *Maddox v. Maddox, supra.* See, also, *Mackall v. Mackall*, 135 U. S. 171, and cases cited; *Smith v. Smith*, 48 N. J. Eq. 591; *Jackson v. Hardin*, 83 Mo. 185; *Farmer v. Farmer*, 129 Mo. 530.

Mrs. Berberet was shown by the evidence to be a woman of more than ordinary intelligence and business capacity, and the execution of her will entirely free from fraud or undue influence. Not even a suspicion of fraud attended its procurement or execution, and to sustain the verdict of the jury under the facts in proof as disclosed by the record, would be to, in effect, say that no person, however intelligent, however free from fraud or undue influence, could dispose of his property by will, unless he do so according to the ideas of fairness and justice of some jury, who may possibly have to pass on it after his death. The judgment is reversed, and the cause remanded with directions to the court below to enter up judgment for the proponents of the will, defendants herein. GANTT, P. J., and SHERWOOD, J., concur.