GEORGE H. POTTER, Appellant, v. EMMA POTTER RITCHARDSON and E. F. RUETHER, Administrator with the Will Annexed of the Estate of IDA A. POTTER, Deceased, Respondents, No. 41563—230 S. W. (2d) 672.

Division One, May 8, 1950.

Rehearing Denied, June 13, 1950.

*Byars & Spencer* for appellant.

662

*Ralph L. Alexander* and *Warren D. Welliver* for respondents; *Alexander, Ausmus & Harris* of counsel.

LOZIER, C.—This is a contest of the will of Ida A. Potter. Plaintiff was a brother and defendant Ritchardson was a sister of testatrix, and the two were her heirs at law. Mrs. Ritchardson was sole beneficiary under the will. The will was probated and defendant Ruether was appointed administrator with the will annexed. The will was sustained and plaintiff appealed. The appeal is here because title to real estate is involved and the amount in dispute exceeds $7500.

The contested document was upon a form consisting of a single sheet with printed matter, dotted lines and blank spaces on both sides. The first page, or the front of the sheet, was as follows (with the words written on dotted lines by Miss Potter italicized): "Last Will and Testament. Know All Men By These Presents: That I, *Ida A. Potter*, of the County of *Boone*, State of Missouri being of sound mind and memory, and realizing the uncertainty of life and the certainty of death, do make and publish this, my LAST WILL AND TESTAMENT, in manner and form following *I will to my Sister Emma Potter Ritchardson all my personal property Bonds real estate and what so ever I possess After all my funeral expenses and just expenses are paid.*" The remainder of that page consisted only of dotted lines, upon none of which any writing appears.

At the top of the second page, or the back of the sheet, were three dotted lines similar to those on the front. Below these was the usual printed clause for appointment of executor and revocation of former wills; then the usual printed testimonium clause, below which was the usual signature line ending with the printed "Seal". No writing appeared in these clauses and no name was written on the signature line. Then followed the attestation clause form, on the signature lines of which each of the attesting witnesses had written her name and "Columbia, Mo." Below these signatures was a printed note set-

ting out the form of request that the executor serve without bond. No writing appeared in this.

The foregoing completes the description of the entire front and the upper half of the back. When the sheet is folded once (lengthwise), the fold is immediately below the printed note last mentioned. Below that, on the upper right hand portion of the lower half of the back, but with printing and writing (of Miss Potter, shown in italics) in a vertical position, was: "LAST WILL and TESTAMENT of *Ida A. Potter* Date *April 22, 1933.*" This is the part of printed legal forms provided; and usually used only, for identification of the folded document.

Omitting references to transcript page numbers and summarizing quotations of the evidence, we quote appellant's Statement of the Evidence:

"Miss Ida A. Potter was in her seventies when she died in Columbia, Missouri, on the 10th day of December, 1948. She had never been married. She left surviving her, her brother, appellant George H. Potter, and her sister, respondent Emma Potter Ritchardson, as her only heirs at law. Miss Potter had been employed by the Missouri Telephone Company in Columbia as chief operator since before 1909, when she retired in about 1945. In the course of her employment as chief operator, she had at times as many as 53 or 54 girls under her direction or supervision. . She was the supervising executive of the largest division of the company outside of the construction division. Ida Potter was a highly educated woman and was considered a very careful and prudent business woman. She was very particular and exacting about her detailed business transactions and always directed the employees who were under her supervision to read over papers to be signed to see that they were proper.

"In the month of April, 1933, Miss Potter was at work at the office of the Missouri Telephone Company when she called Miss Pearl Hall and Miss Mary A. Willis, employees who worked in the office under her direction, to her desk and stated in effect that she wanted them to 'witness' or 'sign' a will. Miss Mary A. Willis died after the probate of the alleged will and before the trial of the cause. Miss Pearl Hall was the only witness for the respondents on the issue of due execution, and her testimony is confusing and contradictory as to the use of the words 'witness' or 'sign.' Miss Hall testified on direct examination as follows: [That Miss Potter told the attesting witnesses, "I am making my will and want you-all to witness it and sign it," and that they did.] Upon cross-examination, Miss Hall stated: [That she did not recall whether she had said anything in her deposition about Miss Potter using the word "witness."]

"Miss Potter had produced an ordinary printed form of a will with blank spaces provided in the exordium, the body, the testimonium clause and the attestation clause to be filled in to complete the instru-

ment as a will. A blank line was provided under the testimonium clause for her signature. Miss Potter then proceeded to write in her name and the words 'Boone' and 'Missouri' in the blank spaces provided in the exordium, and in the blank spaces provided in the body of the will, she wrote a short paragraph disposing of her property. She wrote nothing else in the remaining blank spaces provided for the body of the will in the printed form, nor in the spaces left for the appointment of an executor or an executrix. The form provided the usual testimonium clause and the usual attestation clause, but she did not fill in any of the blank spaces thereunder. She did not sign her name on the blank provided for a signature under the testimonium clause in the usual way of executing instruments. She did, however, turn the printed form over and write her name and the date, April 22, 1933, on the back on the lines provided below the printed words, 'Last Will and Testament Of,' which were perpendicular to the lines and printed matter contained in the body of the will, and which are usually and customarily provided on all printed forms of legal documents for the identification of and filing of a printed instrument when folded. The space in which Miss Potter wrote her name was printed solely for this purpose and for no other. After Miss Potter wrote in the disposing clause in the body of the instrument, the testimony of Miss Hall, the only witness on the point of signing, was contradictory. She stated on direct examination as follows: [That after Miss Potter wrote on the front of the form she wrote her name on the back and handed it to the attesting witnesses, and asked them to read it before they signed, and that they did read and then sign.] However, on cross-examination, Miss Hall testified differently, as follows: [That when her deposition was taken she was confused and that her statement then (that Miss Potter signed after the witnesses had) was a mistake; and that, actually, Miss Potter had signed first.]

''The appellant objected to all evidence relating to the execution of the alleged will and also to the introduction of the instrument as evidence.

''After the dispositive clause written in by Miss Potter on the face of the form, nothing appears on the back side of the form, except the names 'Mary A. Willis' and 'Pearl Hall,' and the words, 'Columbia, Mo.' written in the attestation clause, and the name 'Ida A. Potter' and the date 'April 22 33' written in the space provided on the back for convenience in identification and filing of the instrument when folded, as follows: [Copy of back of document.]''

To which we add: Miss Hall identified the handwriting of herself, Miss Willis (then deceased) and Miss Potter, respectively, on the document.

It is not contended that when Miss Potter wrote her name on the blank line in the exordium clause she ''signed'' the document. Respondents concur in appellant's statement: ''The sole issue in this.

case is whether the instrument purporting to be the will of Ida A. Potter was signed under the provisions of the statute of wills of this state. Sec. 520 R. S. Mo. 1939. It is conceded that Ida Potter wrote her name in the presence of two persons on that portion of a printed form of a will in a blank space ordinarily provided in all printed forms of legal documents for the ▮▮▮▮ identification of the document, when folded, for convenience in filing the instrument.'' Appellant relies upon Catlett v. Catlett, 55 Mo. 330. Respondents contend both that that case is distinguishable upon the facts, and that the decision is an erroneous construction of the statute and should be overruled.

In the Catlett case, Catlett, sick at his home, asked his friend Davis to have his will drawn by an attorney. Davis went to the lawyer's office and returned to Catlett's home with the instrument as drafted by the attorney. In the presence of Yoho and others, Davis read the document to Catlett who said it was exactly as he wanted it. Catlett then asked Davis and Yoho ''to witness this will,'' and both then signed the attestation clause in the presence of Catlett and the others. Catlett did not write his name anywhere on the document and it appeared only in the exordium clause. The court said: ''It is not pretended in this case, that the will was signed by the testator either at its conclusion or elsewhere, nor is it pretended that the will was ever written in his presence; but it is clear that the will was written by an attorney, at his office, at the request of a friend of the deceased.''

Reversing the judgment upholding the will, the court held that the provisions of the statute (authorizing the signing ''by the testator or by some person, by his direction, in his presence'') were mandatory. Then the court added: ''But we do not rest this case entirely on the ground that the will was not written and the testator's name inserted therein in the presence of the testator. We believe that the proper and rational construction of the statute is that the will should be signed by the testator; that the words in the statute requiring the will to be signed by the testator, or by some person by his direction and in his presence, means that the instrument as written shall be subscribed by affixing the name of the testator in the usual way of executing other instruments of writing; and that not only must the statute of frauds be complied with, but that the statutes concerning Wills must also be complied with; and that the words of the statute should be construed by their ordinary import and meaning, as our statute requires.''

The court further stated that English courts ''have held in numerous cases that it was a sufficient signing of the will under the statute of frauds, that the name of the testator should appear in the body or commencement of the will. [The court's quotations from authorities discuss only instances where the name was written by the testator him-

self.] These decisions have been followed in most of the States in this country.''

Thus was qualified the ''rule in Lemayne v. Stanley.'' Though cited in the briefs, the opinion contains no reference to this famous case decided by the Court of Common Pleas, at Westminster, in 1681. 3 Levinz 1. Stanley had written his own will, devising lands, beginning: ''*In the name of God,* Amen, *I* John Stanley *make this my last will and testament.*'' He did not subscribe his name. Three witnesses subscribed in his presence. The court sustained the will, saying: ''For, being written by himself, and his name in the *will*, it is a sufficient signing within the statute, which does not appoint where the *will* shall be signed, in the *top, bottom,* or *margin,* and therefore a *signing* in any part is sufficient.'' (Italics the court's.)

The Catlett case has been cited in three Missouri cases only. In Walton v. Kendrick, 122 Mo. 504, 27 S. W. 872, we said that the point ruled in the Catlett case was ''simply that the signing required by the statute was the affixing of the testator's name at the bottom of the will.'' In Avaro v. Avaro, 235 Mo. 424, 138 S. W. 500, we cited the case as authority for the mandatory nature of the statute. In Traylor v. Cabanne, 8 Mo. App. 131, the case is cited as authority for ''the law of Illinois, where the contract was made, and the law as generally recognized.''

The Catlett case properly held that the requirements of the statute were mandatory. Ray v. Walker, 293 Mo. 447, 240 S. W. 187; and Avaro v. Avaro, supra. However, we should now reconsider just what certain of those *requirements* are, and particularly whether or not it is a *requirement* that the ''signature'' be ''subscribed.''

In our opinion, our construction of the statute in the Catlett case was erroneous and contrary to the overwhelming weight of authority. The statute, by requiring that the names of the attesting witnesses be ''subscribed'' expressly fixes the location of their signatures. This is a *requirement*. But there is no *requirement* that the *testator's signature* be ''*subscribed.*''

The statute provides two methods of ''signing by the testator.'' He may either write his name himself or may direct someone else to write his name for him in his presence. The first was not in issue in the Catlett case and the purported will should have been rejected because it was not signed for the testator by another at his direction and in his presence. However, the court expressly did not bottom its ruling upon this ground. It went further and announced a rule that ''signing,'' *by either method,* meant ''subscribing.'' In the pending case ''signing'' by the testatrix herself is involved. As the statute is silent as to the *location* of a testator's ''signature'' under either method, the opinion in the Catlett case requires us to reconsider the matter, irrespective of which is involved. In other words, the method

is not material and the question is: In either instance, is or is not "subscribing" required?

The briefs in the pending cause reflect the research made by counsel for both appellant and respondents. Therein are set out and discussed the signing of wills under both English and American statutes; and judicial applications and qualifications, and legislative modifications, of the rule in Lemayne v. Stanley. They point out that the first Wills Act required only that devises of lands be in writing (not necessarily by the. testator) and that no signing was required; that in 1677, the Statute of Frauds added the requirement that such devises be "in writing, and signed by the party so devising the same or by some other person in his presence and by his express directions, and. shall be attested and subscribed, in the presence of said devisor by three or four credible witnesses"; that it was this statute which was construed in Lemayne v. Stanley; that in 1837 an English Statute required signing "at the foot or end thereof"; that this act, however, was amended in 1852 by an act declaring that the testator's signature might be at or after or following or under or beside or opposite to the end of the will so long as it appeared from the face of the will that the testator intended to give effect by his signature to the writing as his will; that in this country the statutes of most states require only that the will be "signed"; that those of 12 states require that it be "signed at the foot or end thereof," and that those of 2 states require that the will of a married woman be "subscribed"; and that where the statute requires "signing" only, most courts have followed Lemayne v. Stanley. Counsel have also called our attention to three excellent articles: 11 Iowa Law Review 1, 11 Notre Dame Lawyer 433, and 29 Mich. Law Review 685.

"As a general proposition, in the absence of a statute requiring a will to be signed at the 'end,' 'foot,' or 'close,' the writing of testator's name in or upon the instrument is sufficient, *if, at the time of the writing or the publication there is an intent on testator's part that such writing will complete and authenticate the document as his testamentary act.*" Anno. 29 A. L. R. 892. We italicize the last clause for purposes of emphasizing the principle therein stated. (Legislative recognition of this principle is contained in the English Wills Act of 1852.) The language of the Catlett decision indicates that this element, the testator's intent (not as to *declaring,* but as to *signing,* his will), was not considered. Regardless of intent, the name *must* be written in the "usual place." And the logical result there (as in any case where this element is overlooked or ignored) is that the testator's intent to authenticate his will by writing his name is arbitrarily determined by the physical location of the name on the document.

It is a reasonable inference that by signing below the testimonium (or, as in the Catlett case, "subscribing by affixing his name in the

usual way of executing other instruments of writing"), the testator intended ▮▮▮ to authenticate his will. But it does not follow that the converse is true or that by signing at a place other than below the testimonium (or other than "in the usual way"), the testator did not intend to authenticate his will.

We do not attempt to prescribe the kind of evidence required to show testator's intent in writing his name *anywhere* (including after the testimonium) on the document purporting to be his will. Rarely does the testator contemporaneously make a statement as to his intent in writing his name. Often, as in the pending case, the testator has not been assisted by an attorney in either the drafting or the execution of the instrument. And where a lawyer draws the will and supervises its execution, he does not usually have the testator state (or himself state for the testator) that the testator is going to sign "for the purpose of authenticating the paper as his testamentary act" or words of similar import. So such intent, at the time the testator writes (or adopts) must be inferred from his other statements and his conduct or upon a series of facts. And, of course, the facts in the series in a particular case depend upon the circumstances of that case. See 29 Mich. Law Rev. 685, as to signature required, testator's intent in signing and evidence as to such intent.

▮▮ So, in the pending case, we confine the application of our present ruling to the facts here. We note, first, that Miss Potter's purported will was duly attested. The subscriptions of the two attesting witnesses are required by the statute, but the attesting clause is not. However, the presence of this incomplete attestation clause upon the document supports the presumption of due execution arising from the signatures of the witnesses. German Evan. Bethel Church of Concordia v. Reith, 327 Mo. 1098, 39 S. W. 2d 1057, 76 A. L. R. 604 (Anno. p. 617). Complete attestation clauses were involved in Morrow v. Bd. of Trustees of Park College, 353 Mo. 21, 181 S. W. 2d 945, and Palm v. Maguire, 347 Mo. 189, 146 S. W. 2d 636.

▮▮ We next note that Miss Potter's name appears at the spacial or physical end of the document, but not at the sequential end as it follows the attestation clause and signatures. (Her name was "subscribed," even under statutes requiring signature "at the end or foot." 57 Am. Jur. 216. But was not "affixed in the usual way of executing other instruments of writing" under the ruling in the Catlett case. See In re Manchester's Estate, 174 Cal. 417, 163 Pac. 358.) A will with the signature after the attestation clause is valid. In re Young's Will, 153 Wis. 337, 141 N. W. 226; In re Dutcher's Estate, 172 Cal. 485, 157 Pac. 242; and Lucas v. Brown, 187 Ky: 502, 219 S. W. 796.

The signature, while on a vertical line on the unfolded sheet, is on a horizontal line on the folded document. Its position, just

under the suggestive words, "Last Will and Testament," is most persuasive as to Miss Potter's intent when she signed her name. She had called the two witnesses to her desk, told them that she was making her will and wanted them to witness and sign it, immediately wrote out the will in their presence, read it to them, folded the sheet and wrote her name on the outside of the sheet under the words, "Last Will and Testament," and then handed the paper to the witnesses and asked them to read and sign it. Under such circumstances, it is a reasonable inference that, when she wrote her name, Miss Potter did so intending that her signing would complete and authenticate the document as her testamentary act.

Appellants cite In re Dietterich's Est., 127 Pa. Super. 315, 193 Atl. 158, and In re Gagen's Will, 46 N. Y. S. 2d 215. In both, the factual situation is similar to that in the pending case in that a printed form was used, the testator's name was not written in below the testimonium and the testator wrote his name on the blank line on the back below the words, "Last Will of". The Pennsylvania statute required "signing," and the New York statute required "subscribing," at the end of the will. As stated in the Dietterich case: "There is no question here that this decedent intended to make this paper her will, but she failed to live up to the statutory requirement of signing her name at the end of it." In ▆▆▆ view of our ruling above, neither of these cases are applicable.

▆ Appellant next contends that the purported will and evidence as to its execution should have been excluded "because it unequivocally appears from an examination of the instrument as a whole that the instrument is incomplete and that the intent of the testatrix was not consummated," citing 68 C. J. 984 (Wills, Sec. 750). The document here is not an incompleted or unfinished document. It was a purported will. The testatrix's intent was shown. We rule this point against appellant.

▆ Finally, appellant contends that the trial court erred in refusing to direct a verdict rejecting the will "because reasonable minds could not differ on the proposition that when Ida A. Potter wrote her name on the back of the instrument she had no intention at that time of authenticating same as her complete last will and testament and because defendants relied on the evidence of a single witness who gave contradictory and confusing testimony." We have heretofore summarized the testimony of Miss Hall of which appellant complains. The credibility of this witness and the weight to be given to her entire testimony were matters for the jury. Sparks v. Auslander, 353 Mo. 177, 182 S. W. 2d 167; Rainwater v. Wallace, 351 Mo. 1044, 174 S. W. 2d 835; and Adelsberger v. Sheehy, 332 Mo. 954, 59 S. W. 2d 644.

Even if Miss Hall had testified that Miss Potter signed after the attesting witnesses, the presumption of due execution is not destroyed

as a matter of law. The clause made a prima facie case of due execution and the issue was still for the jury. German Evan. Bethel Church of Concordia v. Reith; Palm v. Maguire; and Morrow v. Bd. of Trustees of Park College, supra. And whether or not Miss Potter said "this is my will and I want you to witness (or sign) it" is not material. Her acts and conduct were sufficient. Palm v. Maguire, supra. We rule this point against appellant.

We restate our ruling: That, as a matter of law, "subscribing" is not required by Sec. 520, and that the Catlett case, insofar as it holds otherwise, is overruled; that the ultimate fact is whether a testator's name was written with an intention on his part to make the document effective as his will; that the location of the name is an evidentiary fact relating to that intent; and that the name was not "subscribed" is not conclusive that the required intent was not present. The judgment should be and is affirmed.

It is so ordered. *Van Osdol* and *Aschemeyer, CC.,* concur.

PER CURIAM:—The foregoing opinion by LOZIER C., is adopted as the opinion of the court. All the judges concur.