WILMA STARRET BURKLAND and H. C. BURKLAND, Executor of the ESTATE of FAY STARRET, Deceased, Respondents, v. LUCILLE RAYBORN STARRY; JESSIE PAGE; NATIONAL COLLEGE FOR CHRISTIAN WORKERS; JEWELL LODGE No. 480, ANCIENT FREE AND ACCEPTED MASONIC LODGE; OCCIDENTAL LODGE No. 70, INDEPENDENT ORDER OF ODD FELLOWS; and HARRY WILLIAMS and MARY E. SHOEMAKER, Heirs of A. K. WILLIAMS, Deceased, Appellants, No. 41876—234 S. W. (2d) 608.

Division One, December 11, 1950.

*Justin D. Bowersock, L. M. Crouch, Jr., Felix Gross, Lyman J. Bishop, W. M. Anderson, Leslie J. Lyons* and *Donald E. Lyons* for appellants.

*Frank Cottey, Trusty, Pugh & Green* and *Guy W. Green, Jr.*, for respondents.

[609]  LOZIER, C.—Plaintiffs-respondents (hereinafter called contestants) sued defendants-appellants (hereinafter called proponents) to contest the will of Mae Starrett Rayborn. The jury's verdict upheld the will and judgment was entered accordingly. Thereafter, upon contestants' motion, the verdict and judgment were set aside and judgment against the will was entered and, in the alternate, a new trial was granted. The sole issue is due execution.

The contested document (hereinafter called the paper or the will) was upon three sheets of paper and was entirely in Mrs. Rayborn's own writing. Following the date, August 5, 1935, was: "The last will and testimony of Mae Starrett Rayborn." The paper, obviously testamentary in character, directed payment of debts and funeral expenses, bequeathed and devised property and appointed an executor. At the bottom of the third or last sheet was Mrs. Rayborn's signature and, immediately below it, the signatures of Vera Redfield Thomas and Effie M. Zaun. There was no attestation clause. Apparently, once or several times the document had been folded immediately *above* Mrs. Rayborn's signature.

Mrs. Rayborn's handwriting and her signature were proved. Mrs. Thomas identified her own signature. Mrs. Zaun "thought" the other signature "looked like hers," but she had no recollection of "how she happened to sign that." However, that the signature was hers was definitely established by her attorney and her banker.

Mrs. Thomas testified that her deceased husband had handled business affairs for Mrs. Rayborn; that she (Mrs. Thomas) was working in her husband's office when Mrs. Rayborn brought the will there and asked her to witness her signature to her will; that when she (Mrs. Thomas) signed as such witness below Mrs. Rayborn's signature, the paper was so folded that she could see only Mrs. Rayborn's signature; that Mrs. Zaun was not present and her signature was not on the paper; and that that was the only time she had signed as a witness to Mrs. Rayborn's signature, other than taking, as a notary public, her acknowledgment to documents in business transactions.

Mrs. Zaun was 79 years old at trial time. She testified that she had been a close friend and neighbor of Mrs. Rayborn for many years; that Mrs. Rayborn had never talked to her about a will, and had never asked her to sign or witness her will; and that, while her recollection was clear as to this, she "did not remember ever signing the will" and "didn't remember anything about it at all"; that she "thought she would remember it" if Mrs. Rayborn had talked about or asked her to witness her will; that Mrs. Rayborn never

mentioned a will; and that Mrs. Rayborn was pretty "close-mouthed about her personal affairs" and never talked business matters with Mrs. Zaun, or with anyone else in Mrs. Zaun's presence and, if she had, Mrs. Zaun "thought that would have stood out in her (Mrs. Zaun's) mind."

Proponents' other evidence was that when she signed the will, Mrs. Rayborn was in her thirties and was of sound mind; and that she was a "strong-willed woman," and a capable business woman owning and managing business properties.

Contestants offered no evidence. At the close of proponents' case, the trial judge denied the motions of the parties, respectively, for a directed verdict. However, it appears from the order granting, in the alternate, a new trial, that it was the trial judge's belief that: proponents' evidence (a) not only failed to prove that Mrs. Zaun "attested" the will, but (b) "conclusively [610] proved" that she did not, in that Mrs. Rayborn neither declared her will to nor requested Mrs. Zaun to sign as witness to her signature, and in that when Mrs. Zaun signed the paper she did not know it was Mrs. Rayborn's will. For these reasons, apparently, the trial judge set aside the verdict and initial judgment for proponents and entered judgment for contestants.

Contestants assert that "if the will had contained a proper and complete attestation clause, a prima facie case of 'due execution' would have arisen upon showing the genuineness of the signatures in the absence of evidence to the contrary; and that the absence of an attestation clause in and of itself does not invalidate a document as a testamentary instrument where compliance with the necessary requirements are shown by evidence aliunde."

Proponents contend that proof of the genuineness of the signatures raised a "presumption of due execution" that did not disappear with Mrs. Zaun's testimony, because "positive" adverse testimony could not destroy the "presumption" and, even if it could, the testimony of Mrs. Zaun was not positive.

(Mrs. Zaun's testimony certainly was not "positive." Contrast it with that of the alleged attesting witnesses in Wright v. McDonald, 361 Mo. 1, 233 SW 2d 19, and compare it with that of the attesting witnesses in Potter v. Ritchardson, 360 Mo. 661, 230 SW 2d 672, and Morrow v. Board of Trustees of Park College, 353 Mo. 21, 181 SW 2d 945. But, as we think that this issue is immaterial, we shall treat Mrs. Zaun's testimony as "positive.")

Proof of the genuineness of the three signatures created a "presumption" of due execution. See Anno., 76 ALR 617. Such proof made a submissible case unless the "presumption" was destroyed by Mrs. Zaun's testimony. We have concluded that this "presumption" was not destroyed; that it was at least a permissible inference of fact; that it remained in the case as evidence of a disputed fact; and that,

as such, was for consideration of the jury together with Mrs. Zaun's testimony tending to show lack of due execution.

A will contest under Sec. 538, Mo. RSA, is a statutory action at law; the weight of the evidence and the credibility of the witnesses are for determination by the jury; and, in considering whether a submissible case was made, the appellate court looks upon the evidence, and all inferences which may be fairly and reasonably drawn therefrom, in the light most favorable to the party in whose favor the jury's verdict was. Pickett v. Cooper, 354 Mo. 910, 192 SW 2d 412; Norwood v. Norwood, 353 Mo. 548, 183 SW 2d 118; Dowling v. Luisetti, 351 Mo. 514, 173 SW 2d 381; and Fletcher v. Ringo, (Mo. Sup.) 164 SW 2d 904.

We deem our decision in German Evangelical Bethel Church of Concordia v. Reith, 327 Mo. 1098, 39 SW 2d 1057, 76 ALR 604, decisive of the issues here. In that case there was an attesting clause which, however, did not recite that the three witnesses signed in the presence of the testatrix. Proof was made of the authenticity of the signatures of the testatrix and of the three witnesses, one of whom was deceased. The two living witnesses were unable to state whether they had signed in the testatrix' presence.

We there said: "Some cases hold the presumption of due execution arising from an attesting clause or subscription obtains only in the absence of evidence to the contrary—or that it is rebutted when the attesting witnesses appear and give conflicting testimony, particularly if it is convincing. * * * If these decisions have reference to the comparative *weight* of the evidence, and apparently some of them do, we have no quarrel with them, though each case must stand on its own facts. But if they mean to say adverse testimony from the subscribing witnesses produced by the proponents under compulsion of law destroys what would otherwise be a prima facie case for the will, we cannot agree. The proponents do not abandon the presumption by presenting the testimony. They are forced to do it and may cross-examine, contradict and impeach the witnesses. * * * Furthermore, the presumption is not alone that the witnesses if present would *say* the will was duly executed. [611] That sort of presumption would disappear in the light of their actual testimony. But it is more than that: it is presumptive evidence that the will was *in fact* duly executed and subsists as against their assertions to the contrary. It tends to contradict and impeach them; and having inherent probative force, presents a jury question, no matter how convincing the evidence to the contrary may be. * * * Neither does the presumption wholly lose its force if the witnesses testify the attestation clause was not read to or by them, as a few cases say. In other matters, the law does not ordinarily allow people thus summarily to destroy the effect of writings signed by them. * * * And, while the attestation clause of a will is not contractual

and does not directly pass rights or titles, yet the validity of the will, which does do so, is dependent upon the fact of attestation, and this the witnesses vouch for either expressly or impliedly by their subscription. They can come on the stand and deny it, of course, and sometimes truthfully; but to say their denial, however impressive, robs their previous written attestation of its character as *evidence* is to confuse weight, credibility or plausibility with substance." (Italics the court's.)

Wright v. McDonald, supra, involved due execution of a lost and destroyed will. Noting that there was "no substantive evidence establishing an attestation clause," we expressly refused to rule a phase of due execution (not involved in the instant case) in the belief that such determination "should await a case wherein its ruling is essential to a decision, *as under certain circumstances a presumption may arise as to the due execution of the instrument.*" (Italics ours.)

While German Evangelical Bethel Church of Concordia v. Reith, supra, involved an incomplete attestation clause (but one not containing recitals affirmatively showing lack of due execution), we believe that the reasoning upon which it is based, and the principles there applied, are equally applicable to the instant case where there was no attestation clause. Such clause is not required. "Attestation" by "subscription" is sufficient. Morrow v. Board of Trustees of Park College, supra; Avaro v. Avaro, 235 Mo. 424, 138 SW 500; Berberet v. Berberet, 131 Mo. 399, 33 SW 61; Welch v. Wagner, (Mo. Sup.) 232 SW 146; and Nook v. Zuck, 289 Mo. 24, 233 SW 233.

We think that the "presumption" of due execution arising from an attesting clause *or* subscription is, *at least,* a permissible inference of *fact*—a reasonable and logical *inference* which may or may not be drawn (or a *fact* which may or may not be found) by the *triers of fact* (the jury) from the established *facts* of the witnesses' signatures subscribed to the testamentary document, below the signature of the testator. And, as we said in German Evangelical Bethel Church of Concordia v. Reith, supra, this inference or "presumption" remains in the case not only because proponents are not bound by the adverse testimony of witnesses they are required to call, but because this inference or "presumption" is presumptive *evidence*" of the *fact* of due execution.

In Kellogg v. Murphy, 349 Mo. 1165, 164 SW 2d 285, the author of the opinion in German Evangelical Bethel Church of Concordia v. Reith, supra, pointed out the legal effects of "rules of presumption or prima facie evidence" ("purely procedural" and not resting "on a fact basis having substantial probative value") and said: "On the other hand, if the basic *facts* underlying the presumption (*alone* or with other evidence) are strong enough

to support the *required inference,* independent of the presumption, the case does *not fall before controverting evidence,*" citing many Missouri cases. (Italics ours.) See also Jones v. Phillips Petroleum Co., (Mo. App.) 186 SW 2d 868.

In the instant case there was a document, clearly of a testamentary nature, which Mrs. Zaun signed immediately below Mrs. Rayborn's and Mrs. Thomas' signatures,—which she had "subscribed" as required by the statute. From such *fact* alone, the jury was entitled to *infer, or to refuse to infer,* that Mrs. Zaun was "attesting" Mrs. **[612]** Rayborn's will, that is: that Mrs. Rayborn declared the paper as her will, acknowledged her own signature, and requested Mrs. Zaun to sign as the other attesting witness. Such an inference is most logical and reasonable. (It is strengthened by a possible inference drawable from the *facts* of Mrs. Rayborn's business ability and her handling of many business transactions, and also by the manner in which she had previously secured attestation by Mrs. Thomas, the other witness. However, assuming, but not deciding, that such inference from these facts is speculative, we exclude this evidence from our consideration of the inferences which might reasonably and logically be drawn from Mrs. Zaun's signature.)

The cases cited by contestants are inapplicable. The courts of some other states follow rules contra to those announced in German Evangelical Bethel Church of Concordia v. Reith, supra. In others of the cases cited, both of Missouri and of other jurisdictions, the "presumption" of due execution was not ruled. See Fletcher v. Ringo, and Berberet v. Berberet, supra; Ray v. Walker, 293 Mo. 447, 240 SW 187; and Heinbach v. Heinbach, 274 Mo. 301, 202 SW 1123. Cone v. Donovan, 275 Mo. 557, 204 SW 1073, is distinguishable in that the document on its face was not of a testamentary character.

In our opinion, consideration of the "presumption" was for the jury, not the court. *If* the living available subscribing witnesses must be called by the proponents of a will in order to make a prima facie case, and *if* such proponents are not bound by the testimony of such witnesses, and *if* such proponents do not abandon the "presumption" (that by their subscriptive signatures, with or without a testatum clause, they "tacitly * * * signify that the statutory formalities were observed"), and *if* the "presumption" does not "disappear in the light of their actual testimony" but is "presumptive evidence," has "inherent probative" force "and subsists as against their assertions to the contrary," for impeachment purposes, it "presents a jury question no matter how convincing the evidence to the contrary may be." German Evangelical Bethel Church of Concordia v. Reith, supra.

In Potter v. Ritchardson, supra, where the testimony of one of the attesting witnesses was "contradicting and confusing," the

credibility and weight to be given to her entire testimony were held to be matters for the jury. We stated: "Even if Miss Hall had testified that Miss Potter (testatrix) signed after the attesting witnesses, the presumption of due execution is not destroyed as a matter of law. The (attestation) clause made a prima facie case of due execution and the issue was still for the jury."

In a will contest such as this "a verdict can be directed only when the facts in evidence and the legitimate inferences therefrom are so strongly for or against the will as to leave no room for reasonable minds to differ." Norton v. Johnson, 359 Mo. 1214, 226 SW 2d 689. In Potter v. Ritchardson, supra, we ruled that the trial judge properly refused to direct a verdict for contestants. We here rule that the trial judge erred in setting aside the verdict for proponents and entering judgment for contestants.

The judgment is reversed and the cause is remanded with directions to reinstate the verdict of the jury and the judgment originally entered thereon. *Van Osdol* and *Aschemeyer, CC.,* concur.

PER CURIAM:—The foregoing opinion by LOZIER, C., is adopted as the opinion of the court. All the judges concur.