**Chris H. KAHMANN, Appellant,**

v.

**Rollin E. BUCK, Executor of the Estate of Emma Schmidt, Deceased, Respondent.**

No. 25187.

Kansas City Court of Appeals.

Missouri.

Oct. 6, 1969.

Elwyn L. Cady, Jr., Independence, for appellant.

Morrison, Hecker, Cozad, Morrison & Curtis, Karl F. Schmidt, Carl F. Krauss, Kansas City, for respondent.

MAUGHMER, Commissioner.

When the testatrix during her lifetime contracted with a lawyer on a contingent fee basis to prosecute her claim for personal injuries, may such lawyer (unless formally discharged) require her executor to furnish expenses for an appeal of a lawsuit thereon, and to prosecute such suit to finality? That is the question.

The appellant Chris H. Kahmann is a practicing attorney. The respondent Rollin E. Buck is the executor of the estate of Emma Schmidt, deceased. Emma Schmidt, on January 31, 1963, when she was 80 years of age, suffered injuries arising out of an automobile accident. Mrs. Schmidt at the time was riding in an ambulance and was being taken from her home in Kansas City, Kansas, to a Missouri hospital. On the trip, and at 29th and Troost Streets in Kansas City, Missouri, the ambulance collided with a truck which was being operated by one Harold Wendel. Mrs. Schmidt entered into a contract of employment with appellant under which he agreed to represent her in efforts to recover damages for her injuries. The contract was on a 50% contingent fee basis. Litigation was commenced and a trial was held during her lifetime. The trial court directed a verdict against Mrs. Schmidt. She appealed and the Supreme Court held that she had made a submissible case and sent it back for retrial. (Richardson & Schmidt v. Wendel, 401 S.W.2d 455.)

Ten days thereafter and on March 25, 1966, Mrs. Schmidt died, at the age of 83 years. Mr. Rollin E. Buck, respondent, was appointed executor to administer the assets of her estate in Missouri. On September 2, 1966, the Probate Court of Jackson County, Missouri, entered an order directing that the respondent-executor be substituted as party plaintiff in the dam-

age suit. This was done, and soon thereafter the cause again proceeded to trial. This second trial resulted in a jury verdict for defendant. Mr. Elwyn L. Cady, Jr., an attorney in Kansas City, Missouri, aided in both trials and also represents Mr. Kahmann in the litigation now before us.

After the second damage suit trial, which resulted in a jury verdict for defendant, Mr. Kahmann was directed by the executor not to file an appeal. However, Mr. Cady as attorney for the executor-plaintiff, did file a timely notice of appeal. On November 14, 1966, appellant Kahmann filed an "Application for Payment of Expenses of Appeal" with the Probate Court of Jackson County, Missouri. Included in his estimate of expenses for said appeal are the following items: Medical expense, $200.00; Investigation expense, $126.10; Transcript, $380.00; Printing and travel expense, $75.00. The Probate Court on July 21, 1967, allowed all items of expense which were connected with the first appeal, and in addition, the $10.00 filing fee which was required for the notice of appeal in the second case. The probate court refused all other allowances, refused approval for a second appeal, and as grounds therefor, said in part:

" * * * The applicant takes the position that under Sec. 473.273 RSMo. 1959, the executor must continue to prosecute the lawsuit, even though more trials and more appeals may be necessary. The aforesaid Section 473.273 reads as follows:

'Actions instituted by or against decedent, duties.—Executors and administrators shall prosecute and defend all actions commenced by or against the decedent during his lifetime which are maintainable by or against the executor or administrator.'

"A companion Section 473.270 is also quoted as follows:

'Collection of debts, prosecution and defense of suits.—Executors and administrators shall collect all moneys and debts of every kind due to the decedent, and give receipts and discharges therefor, and shall commence and prosecute all actions which may be maintained and are necessary in the course of his administration, and defend all actions brought against him.'

"The applicant contends that the word 'shall' found in each section makes it mandatory for the executor to continue the lawsuit, even though he may be ill-advised to do so. The cases cited by the applicant in support of this contention are will construction cases and are not applicable here, and we find no Missouri cases which support his contention.

"We do not believe that the executor has such a duty as argued by the applicant. The executor *does* have a duty to act in behalf of all of the various interested persons involved in a decedent's estate, the creditors, the taxing authorities, and the distributees. As stated in In re Mills' Estate, [349 Mo. 611.] 162 S.W.2d 807, 'an executor stands in the position of a trustee to those interested in the estate upon which he administers, and is liable only for want of due care and skill, and the measure of care and skill required of him is that which prudent men exercise in the direction and management of their own affairs.'

"We do not feel that, as a prudent man, the executor should carry this appeal any further, and we further feel that an appeal would not be in the best interest of the estate. The lawsuit has been tried twice, both times unsuccessfully, and the most that could be hoped for in prosecution of this appeal would be a remand of the case for another trial. Even if successful, the amount of damages which could be obtained on behalf of the 83 year old decedent would most likely be quite small and the expenses of appeal would be quite large. Therefore, as stated, we conclude that such appeal should not be prosecuted

and our order of even date herewith so states."

In the oral arguments before us, counsel were apparently in agreement that (1) the executor might, if he chose, discharge appellant as attorney in this matter and that such discharge would be legally effective, but (2) the discharged counsel would then have a cause of action on quantum meruit basis to recover for the value of his services to date. We doubt if this is so unless it be determined that such discharge was unreasonable and wrongful. However, the executor has not as yet seen fit to discharge counsel.

It is appellant's position that the language used in Section 473.273, V.A.M.S., which is set forth in full herein, being a part of the probate court memorandum opinion, is mandatory. As stated in his brief, " * * * An Executor is not empowered to 'throw in the sponge' when the course of litigation looks dark. He must prosecute until the final inning is over." In support of his contention that the word "shall" as used in the statute means "must" and is mandatory, appellant cites Potter v. Ritchardson, [360 Mo. 661] 230 S.W.2d 672. This case holds that the statute requiring that every last will and testament "shall" be in writing signed by testator or by some person at his direction and in his presence, and requiring attestation by two or more competent witnesses, is mandatory. We are also referred to McMillan v. Barnard Free Skin & Cancer Hospital, [304 Mo. 635] 264 S.W. 410, where a direction that the trustees "shall" pay certain annuities was held to be mandatory. These cases involve last wills and testaments. One concerns signatures to a will and the other a specific direction to trustees. That the word "shall" is ruled mandatory in those statutes respecting wills does not require a similar construction of Section 473.273, supra.

Appellant also asserts that the court's holding in Argeropoulos v. Kansas City Rys. Co., 201 Mo.App. 287, 212 S.W. 369, squarely supports his contention. In Ar-geropoulos there was a $5,000.00 judgment for the plaintiff in a damage suit; defendant had appealed; while the appeal was pending plaintiff assigned all his rights in said judgment to the attorneys. Before the appeal was determined plaintiff settled directly with the defendant, executed a release and attempted to dismiss the action. The court held that the plaintiff had assigned all his interest in the judgment and therefore could no longer compromise the judgment, execute a valid release or dismiss the appeal. That case certainly does not rule our case.

In determining whether or not the word "shall" as used in Section 473.273, supra, is completely mandatory and inflexible under any circumstances and in all cases, the provisions of Section 473.293, V.A.M.S., must also be considered. We quote therefrom:

"When any personal property is valueless, * * * or is in such condition that it is of no benefit to the estate, the court may by order authorize the executor or administrator to make such disposition thereof as the court may find to be appropriate, including, * * * the abandonment, giving away or destruction thereof, * * * or such other disposition as may be appropriate in the circumstances."

It has long been understood that an executor or administrator serves in a fiduciary capacity. It is his duty and he is required to look after the interests and to act for and on behalf of all persons who have an interest, immediate or remote, in the estate. These persons include not only the heirs, devisees and legatees, but creditors, including taxation claimants. This required duty and the care required was stated long ago in Merritt v. Merritt, 62 Mo. 150, 157, in these words:

" * * * The prevailing rule now established in this court is, that executors and administrators stand in the position of trustees to those interested in the estates upon which they administer, and

are liable only for want of due care and skill, and that the measure of care and skill required of them is that which prudent men exercise in the direction and management of their own affairs. * * *"

This quotation was approved specifically in 1942 by our Supreme Court (In re Mills' Estate, 349 Mo. 611, 162 S.W.2d 807, 813). One of the disputed points (In re Alexander's Estate, Mo., 360 S.W.2d 92, 107) concerned the allowance to the administrator of attorney fees which he had paid. The court cited In re Mills with approval and specifically declared:

"* * * There must be a judicial determination whether the services were *necessary* or *beneficial* to the estate. * * *"

This court has found no Missouri case deciding the precise point at issue here, nor has counsel referred us to any such case. However, the Court of Appeals of New York, in Crowley v. Wolf, 281 N.Y. 59, 22 N.E.2d 234, 134 A.L.R. 970, passed upon the same general proposition. There the attorney had a contingent fee contract to represent a widow and endeavor to secure her full share of her deceased husband's estate. The main dispute was whether her share was to be computed on the basis of the net estate or the gross estate. Her attorney contended it was the gross estate. He lost on this theory in two courts and there was comment that it was almost an absurd contention as it would result in taking nearly all of the net estate. The net estate is, of course, what any deceased person actually leaves. The lawyer in Crowley litigated his contention in two forums and unsuccessfully. The client discharged him. He sued for a fee computed on either the contract basis or on quantum meruit. The decisions were against him. We incorporate three excerpts from the opinion which reveal the court's reasoning and declare the results.

"* * * A client who employs an attorney on a contract for a contingent fee has an absolute right to discharge the attorney and will not be liable on quantum meruit if the discharge was in good faith, for cause, and not wrongful. * * *"

" 'It is quite well settled that, where the plaintiff in a case becomes satisfied that his cause of action lacks merit, he may discontinue the suit, and surely where a trial of the cause of action has been had and an adverse judgment rendered, there is no obligation upon the plaintiff to further carry on the litigation simply because his counsel desires to do so. It is not the policy of the law to protract or continue litigation, but when a party to a suit in good faith becomes satisfied that his contention is without merit, and desires to abandon it, he must be allowed to do so. Thornton on Attorneys at Law, Sec. 646; 2 R.C.L. p. 1000.' " Citing cases.

"It seems to us that a holding in the case at bar that plaintiff can recover would be contrary to the right which a client always has to end further litigation when convinced by a decision after trial against him upon the merits. It is true that the decision of the referee appointed by the Surrogate does not have the same effect as a final judgment. Nevertheless it is a decision after trial and if it has the effect of honestly convincing a client that his case is hopeless he should not be compelled to go on in order to afford his attorney an opportunity to earn a fee."

If the executor believes that further litigation of a claim or suit will not be advantageous and if the probate court concurs, then unless such determination is unreasonable, we believe that the executor and the probate court concurring, may control any further litigation of the claim, may lawfully forbid an appeal, and may do so without incurring any liability to the lawyer who had a contingent fee contract with the testatrix. Such attorney has no interminable and everlasting vested interest in the lawsuit arising out of the claim,

which empowers him to require the estate to expend its assets in protracting this improvident and unwise litigation for what appears to be only a glimmering hope that counsel might someday receive some sort of a fee therefrom.

 Was it the part of wisdom and the exercise of good judgment to abruptly halt further litigation herein? We think so. The memorandum opinion of the probate court so holding and giving reasons is to us persuasive. The circuit court agreed. Here is a lawsuit that has been tried twice. On one occasion the trial judge directed a verdict against the claimant. The Supreme Court said, "Let it go to the jury." This was done in a second trial but the jury brought in a verdict for defendant. The claimant, Mrs. Schmidt, is now deceased. She was 83 years of age when she died and 80 years of age when the alleged injuries occurred. No medical evidence as to the extent of her injuries was offered at the first trial. It would cost the estate several hundred dollars to pursue this appeal to the appellate court. The utmost there possible to secure would be an order for a third trial of this claim which has already failed twice. General injuries to a woman 80 years of age would not support a very large verdict and judgment. In our opinion the decision of the executor and the probate court to discontinue this litigation is not an unreasonable determination. In our opinion a conclusion to pursue the litigation further would be unreasonable and would closely approach absurdity.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.